[No. 61889-5.   En Banc.   June 29, 1995.]

THE STATE OF WASHINGTON, *Petitioner*, v. EFRAIN SALAS, *Respondent*.

174

John Knodell, Prosecuting Attorney, and Jerald R. Hamley, Deputy, for petitioner.

Paul J. Wasson, for respondent (appointed counsel for appeal).

SMITH, J. — The State of Washington seeks review of a decision of the Court of Appeals, Division Three, which reversed and remanded for a new trial Appellant Efrain Salas'[1] conviction in the Grant County Superior Court for vehicular homicide under RCW 46.61.520. We granted review. We reverse.

## QUESTIONS PRESENTED

The first question presented is whether the trial court properly instructed the jury to find Appellant Efrain Salas' intoxication a proximate cause of the victim's death,

---

[1]Most documents in the file refer to Appellant as "Efrain (NMI) Salas", "Efrain Salas", or "Ephrain Salas". However, in "Defendants' Acknowledgement of Advice of Rights" and in the "Determination of Indigency Report" Appellant signed and printed his name as "Efrain Salas Alfaro", a family name arrangement not unusual in some Latino cultures. See Clerk's Papers, at 21-24.

and whether erroneous and misleading instructions deprived Appellant of his due process right to a fair trial. The second question is whether there was sufficient evidence to convict Appellant Salas of vehicular homicide under RCW 46.61.520.

## STATEMENT OF FACTS

On April 3, 1992, Appellant Efrain Salas, Miguel Soto-Torres and Humberto Jimenez-Magana were driving north on State Route 243 in Mr. Soto-Torres' 1977 Dodge automobile.[2] Appellant was driving. Mr. Soto-Torres was sitting in the back seat and Mr. Jimenez-Magana was seated in the front passenger seat.[3]

On that date, Mr. Soto-Torres and Appellant drove the Dodge automobile from Moses Lake to Mattawa to look for work.[4] They first drove to Mattawa to meet Mr. Jimenez-Magana, who had a possible lead on jobs for both men.[5] Mr. Soto-Torres drove with Appellant from Moses Lake to Royal City where they stopped at a store and purchased chicken and beer.[6] Appellant Salas drove the automobile from Royal City to Mattawa. Mr. Soto-Torres did not want to drive the vehicle because he did not have a Washington driver's license and did not want to run the "risk [that] the police would stop [him]."[7] Upon arriving in Mattawa, they stopped at a store and Mr. Soto-Torres purchased a six-pack of beer. Mr. Soto-Torres did drive, though, because he knew where Mr. Jimenez-Magana lived.[8] The men sat at Mr. Jimenez-Magana's home drinking beer. Mr. Jimenez-Magana had already made arrange-

---

[2]The 1977 Dodge belonged to Mr. Soto-Torres, but was not registered in his name. Verbatim Report of Proceedings, at 44, 138.

[3]Clerk's Papers, at 144, 162.

[4]Verbatim Report of Proceedings, at 137.

[5]Verbatim Report of Proceedings, at 140.

[6]Verbatim Report of Proceedings, at 138-139.

[7]Verbatim Report of Proceedings, at 44, 138.

[8]Verbatim Report of Proceedings, at 140.

ments for them to begin work the following Monday.[9]

Appellant Salas wanted to return to Moses Lake that evening[10] and agreed to drive because Mr. Soto-Torres said he was too intoxicated to drive.[11] The three men left for Moses Lake with Appellant Salas driving. On the way to Moses Lake, the Dodge became stuck in the sand when Appellant Salas pulled to the side of the road to allow for passenger relief.[12] Dale and Linda Bye of Wanapum Village helped pull the Dodge out of the sand. Although they could not identify the driver of the vehicle, they did not think the three men seemed intoxicated at the time.[13]

After the Dodge was pulled out of the sand, the three men got back into the automobile and continued driving toward Moses Lake. Andre Pieratt, proceeding north on State Route 243, observed a vehicle swerving and driving erratically.[14] He followed it as it continued to swerve into oncoming traffic. Mr. Pieratt called 911 to report he was following a car with three people and believed the driver was intoxicated.[15] He could not identify the driver.[16]

Miguel Soto-Torres tried to warn Appellant Salas to stop at a posted stop sign, but realized Appellant was driving "too fast and saw he wasn't going to be able to stop".[17] Appellant did not stop at the stop sign at the intersection

---

[9]Verbatim Report of Proceedings, at 141.

[10]Verbatim Report of Proceedings, at 142.

[11]Verbatim Report of Proceedings, at 143.

[12]Verbatim Report of Proceedings, at 144.

[13]Verbatim Report of Proceedings, at 173-75.

[14]Verbatim Report of Proceedings, at 232.

[15]Verbatim Report of Proceedings, at 232.

[16]Andre Pieratt testified at trial that the silhouette of the driver seemed larger than the other two people in the vehicle. He testified it seemed like the driver "might have had more hair. . .[that] his head seemed to be larger". Verbatim Report of Proceedings, at 236.

[17]Verbatim Report of Proceedings, at 145.

of State Route 223 and State Route 26.[18] Upon entering the intersection, the Dodge collided with a 1989 Nissan Sentra driven by Ms. Ginger K. Lynn.[19]

When he arrived at the scene of the accident, Trooper Michael P. Garland noticed that the 1977 Dodge was "facing westbound off. . .Highway 26"[20] and the Nissan was "about 50 to 60 feet off the road. . .facing in a southerly direction. . .almost opposite of Highway 243".[21] Appellant was lying about 20 to 25 feet from the right side of the Dodge, Mr. Jimenez-Magana was lying on his left side about 2 to 3 feet from the Dodge and Mr. Soto-Torres was kneeling next to Mr. Jimenez-Magana trying to talk to him.[22] Ms. Lynn was partially in her vehicle.[23] All four were receiving medical attention from paramedics.[24]

Trooper Garland observed at the scene of the accident a "full half-case of Budweiser and a partially half empty case of Budweiser" in the back seat of the Dodge.[25] He detected a strong odor of intoxicants on Appellant, Mr. Soto-Torres and Mr. Jimenez-Magana.[26] When Trooper Garland became aware that alcohol was likely involved in the accident, he requested that blood samples be obtained from all three men.[27] It was not clear initially at the scene of the accident who was driving the 1977 Dodge at the time of impact.

Miguel Soto-Torres, Humberto Jimenez-Magana and Ms.

---

[18]Verbatim Report of Proceedings, at 145. Mr. Jimenez-Magana testified at trial that he had been asleep at the time of the accident and did not remember the collision with the Nissan Sentra. Verbatim Report of Proceedings, at 163.

[19]Verbatim Report of Proceedings, at 48.

[20]Verbatim Report of Proceedings, at 45.

[21]Verbatim Report of Proceedings, at 45.

[22]Verbatim Report of Proceedings, at 44-46.

[23]Verbatim Report of Proceedings, at 45.

[24]Verbatim Report of Proceedings, at 46.

[25]Verbatim Report of Proceedings, at 68.

[26]Verbatim Report of Proceedings, at 70-71.

[27]Verbatim Report of Proceedings, at 71-72.

Lynn were taken to the Ellensburg hospital,[28] and Appellant was transported by MAST helicopter to the Yakima Memorial Hospital.[29] Appellant had a blood alcohol reading of .15 grams of ethyl alcohol per 100 milliliters of whole blood.[30] Ms. Lynn died at the hospital from internal injuries she received in the accident.[31] Appellant Salas, Mr. Soto-Torres and Mr. Jimenez-Magana were released from the hospital and transferred to the Grant County Jail.[32] The troopers who transferred them did not get a signed release from the hospital, so Appellant, Mr. Soto-Torres and Mr. Jimenez-Magana were then taken to the Ephrata Hospital, reexamined and formally released from the hospital.[33] The three men were again transported back to the Grant County Jail.[34]

Trooper Garland testified at trial that at the hospital and at the jail, there were "still signs of the use of intoxicants".[35] He testified that almost "6 hours after the accident. . . at the Grant County jail [he] could still smell an odor of intoxicants on all three subjects".[36] Further, "their eyes were red and their movements [we]re consistent with. . . having been drinking. . .".[37] Both Mr. Soto-Torres and Mr. Jimenez-Magana testified they and Appellant had consumed a large amount of alcoholic beverages prior to the collision.[38]

Trooper Gary McNinch, a certified traffic collision re-

---

[28]Verbatim Report of Proceedings, at 46.

[29]Verbatim Report of Proceedings, at 71.

[30]Verbatim Report of Proceedings, at 121.

[31]Verbatim Report of Proceedings, at 57, 62-66.

[32]Verbatim Report of Proceedings, at 72.

[33]Verbatim Report of Proceedings, at 73-74.

[34]Verbatim Report of Proceedings, at 74.

[35]Verbatim Report of Proceedings, at 79.

[36]Verbatim Report of Proceedings, at 79.

[37]Verbatim Report of Proceedings, at 79.

[38]Verbatim Report of Proceedings, at 139-43, 160-61.

constructionist,[39] conducted an investigation and reconstructed the accident scene. He testified that the "initial impact" took place near "the center of the eastbound lane of Highway 26, and the northbound lane, past the stop bar and the sign, of State Route 243".[40] There was no evidence of tire marks, skid marks or braking marks prior to the collision.[41] Based upon this investigation, the troopers determined the injuries sustained by Mr. Jimenez-Magana were consistent with injuries that would result from sitting in the front passenger seat, the injuries sustained by Mr. Soto-Torres were consistent with injuries that would result from sitting in the back seat, and the injuries sustained by Appellant were consistent with injuries that would result from driving the vehicle.[42]

On April 6, 1992, Appellant was charged by information in the Grant County Superior Court with the offense of vehicular homicide in violation of RCW 46.61.520(1). The information charged:

> That the said EFRAIN (NMI) SALAS in the County of Grant, State of Washington, on or about 3rd of April, 1992, did drive a vehicle while under the influence of intoxicating liquor, in a reckless manner with disregard for the safety of others which was the proximate cause of injury to Ginger K. Lynn, a human being whose death occurred within three years as a proximate result of that injury.
>
> (Penalty: 10 years and/or $20,000 fine)
>
> Contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Washington.[43]

On June 10, 1992, Appellant was tried by a jury in the Grant County Superior Court before the Honorable Evan E. Sperline. On June 11, 1992, the jury found him "guilty"

---

[39]Verbatim Report of Proceedings, at 99.

[40]Verbatim Report of Proceedings, at 100.

[41]Verbatim Report of Proceedings, at 110.

[42]Verbatim Report of Proceedings, at 94-116.

[43]Clerk's Papers, at 1.

of the offense of vehicular homicide as charged in the information.[44] He was sentenced on July 24, 1992, to 41 months with credit of 112 days for time served and a fine of $20,000.[45] On May 26, 1994, the Court of Appeals, Division Three, reversed Appellant Salas' conviction and remanded for a new trial.[46] On December 7, 1994, this court granted the State's petition for review.

DISCUSSION

Appellant Salas was charged with one count of vehicular homicide, RCW 46.61.520. RCW 46.61.520 provides:

> (1) *When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:*
>
> (a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; *or*
>
> (b) In a reckless manner; *or*
>
> (c) With disregard for the safety of others.
>
> (2) Vehicular homicide is a class B felony punishable under chapter 9A.20 RCW.

(Italics ours.)

The jury found Appellant Salas "guilty" of vehicular homicide as charged in the information. On appeal, he claimed instruction 5, the "to convict" instruction, and the special verdict form were constitutionally defective because they did not require the State to prove his intoxication was a proximate cause of the victim's death. At trial, Appellant presented no evidence, did not testify, presented no instructions and took no exceptions to the instructions given or instructions not given.

■ The Court of Appeals determined that instruction

---

[44]Clerk's Papers, at 68.

[45]Clerk's Papers, at 70-76.

[46]*State v. Salas*, 74 Wn. App. 400, 873 P.2d 578 (1994).

5 "accurately define[d] the offense in statutory terms, but omits the nonstatutory element required by *MacMaster*".[47] The court also found that the "to convict" instruction contained "an erroneous statement of the law: it did not require the jury to find that impairment due to alcohol was a proximate cause of the fatal accident".[48] The Court of Appeals was in error. We recently held in *State v. Rivas*[49] that the nonstatutory element of a causal connection between intoxication and death required by *MacMaster* no longer applies following the 1991 amendment to RCW 46.61.520.

■■ The jury instructions, when taken as a whole, placed the burden on the State to prove that Appellant Salas operated a motor vehicle while under the influence of intoxicating liquor or in a reckless manner, proximately causing the death of Ms. Ginger K. Lynn. This is sufficient under the rule permitting instructions in the language of criminal statutes.[50] Even if that were not so, Appellant Salas did not comply with the basic rule requiring timely exception to jury instructions. He submitted no instructions and took no exceptions to instructions given or not given. As this court has stated:

> It is well-settled law that *before error can be claimed on the basis of a jury instruction* given by the trial court, an *appellant must first show that an exception was taken to that instruction* in the trial court. That rule is not a mere technicality. As we have explained clearly and often:
>
> > CR 51(f) requires that, when objecting to the giving or refusing of an instruction, "[t]he objector shall state distinctly the matter to which he objects and the grounds of his objection." The purpose of this rule is to clarify, at the time when the trial court has before it all the evidence and legal arguments, the exact points of law and reasons

[47]*Salas*, at 407. *See State v. MacMaster*, 113 Wn.2d 226, 778 P.2d 1037 (1989).

[48]*Salas*, at 407.

[49]126 Wn.2d 443, 896 P.2d 57 (1995).

[50]*State v. Johnson*, 7 Wn. App. 527, 539, 500 P.2d 788 (1972), *aff'd*, 82 Wn.2d 156, 508 P.2d 1028 (1973); *State v. Bixby*, 27 Wn.2d 144, 177 P.2d 689 (1947).

upon which counsel argues the court is committing error about a particular instruction.

> Therefore, the objection must apprise the trial judge of the precise points of law involved and when it does not, those points will not be considered on appeal.[51]

With respect to claimed errors in jury instructions in criminal cases, this general rule has specific applicability. CrR 6.15(c) requires that *timely* and *well stated objections* be made to instructions given or refused "in order that the trial court may have the opportunity to correct any error." Citing this rule or the principles it embodies, this court on many occasions has refused to review asserted instructional errors to which no meaningful exceptions were taken at trial.[52]

Normally, if no exception is taken to jury instructions, those instructions become the law of the case.[53] However, "[a]n exception to the rule that a jury instruction must be excepted to exists in the case of 'manifest error affecting a constitutional right' ".[54]

> Constitutional errors are treated specially because they often result in serious injustice to the accused. *State v. Peterson*, [73 Wn.2d 303, 306 n.5, 438 P.2d 183 (1968)]. Such errors also require appellate court attention because they may adversely affect the public's perception of the fairness and integrity of judicial proceedings. *State v. McHenry*, 88 Wn.2d 211, 558 P.2d 188 (1977); *see generally* 3A C. Wright, *Federal Practice* § 856, at 339-41 (2d ed. 1982).
>
> . . . .
>
> . . .The exception actually is a narrow one, affording review only of "certain constitutional questions". Comment (a), RAP 2.5, 86 Wn.2d 1152 (1976). Moreover, the exception does not help a defendant when the asserted constitutional error is harmless beyond a reasonable doubt. *See Chapman v.*

---

[51](Footnote and citations omitted. Italics ours.) *State v. Bailey*, 114 Wn.2d 340, 345, 787 P.2d 1378 (1990).

[52](Citations omitted. Italics ours.) *State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988).

[53]*State v. Hardwick*, 74 Wn.2d 828, 831, 447 P.2d 80 (1968); *State v. Mearns*, 7 Wn. App. 818, 502 P.2d 1228 (1972), *review denied*, 81 Wn.2d 1011 (1973).

[54]*Bailey*, at 347; *see also* RAP 2.5(a)(3).

*California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).[55]

This "constitutional error exception is not intended to afford criminal defendants a means for obtaining new trials whenever they can 'identify a constitutional issue not litigated below.' "[56] Appellant has not established a "manifest error" in this case.

### Sufficiency of the Evidence

■ The standard of review when examining a jury verdict for sufficiency of the evidence in a criminal case is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' ". *State v. Bingham*, 105 Wn.2d 820, 823, 719 P.2d 109 (1986) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)).[57]

■ In this case, Appellant Salas now challenges the sufficiency of the evidence to support his conviction of vehicular homicide and claims he was denied his due process right to a fair trial. He challenges the sufficiency of the evidence concerning the identity of the driver of the vehicle. "In a negligent homicide case the question-. . .whether the accused was driving the vehicle involved in the fatal injury is a question of fact for the jury to decide. Where the jury's finding is based upon substantial evidence it should not be reversed".[58]

In this case, Trooper Michael P. Garland testified that during initial investigation of the accident scene, Humberto Jimenez-Magana was at first considered to be the driver and Miguel Soto-Torres was considered to be a passenger in the front seat. Trooper Gary McNinch testified

---

[55](Footnotes omitted.) Scott, at 686-87.

[56]*Scott*, at 687 (citing *State v. Valladares*, 31 Wn. App. 63, 76, 639 P.2d 813 (1982), *aff'd in part, rev'd in part*, 99 Wn.2d 663, 664 P.2d 508 (1983)).

[57]*State v. Ortiz*, 119 Wn.2d 294, 311-12, 831 P.2d 1060 (1992).

[58]*Engstrom*, at 471.

that the injuries suffered by Mr. Jimenez-Magana, though, were consistent with injuries that would have been suffered by someone sitting as a passenger in the front seat of a vehicle and not as a driver.[59] In addition, both Miguel Soto-Torres and Humberto Jimenez-Magana at trial testified against Appellant Salas and identified him as the driver of the vehicle at the time of the accident.[60] From the unchallenged testimony at trial, there was sufficient evidence to identify Appellant Salas as the driver of the vehicle at the time of the accident.

The only confusion concerning the identity of the driver occurred at the scene immediately after the accident. The persons involved were either incapable of identifying, or could not or would not identify, the driver at the time of the accident. The investigation had not yet gotten fully under way. The State Troopers shortly afterward conducted an extensive investigation of the accident and reconstructed the event, leading to the conclusion that Appellant Salas was the driver. He was identified as the driver by his two passengers who testified as witnesses in his trial.

This court can well be satisfied "that these facts taken together are sufficient to justify the jury's finding that [Appellant Salas] was the driver of the vehicle which caused the death of [Ginger K. Lynn]".[61] Further, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt".[62]

## SUMMARY AND CONCLUSIONS

Proximate cause is not an explicit statutory element of

[59]Verbatim Report of Proceedings, at 94, 112.

[60]Humberto Jimenez-Magana testified that Miguel Soto-Torres was in the back seat and he was in the passenger seat next to the driver. Verbatim Report of Proceedings, at 144, 162.

[61]*Engstrom*, at 472.

[62]Ortiz, at 311-12.

the offense of vehicular homicide under RCW 46.61.520. Nor has it been required under *State v. MacMaster, supra,* since the 1991 amendment to the statute.

The Court of Appeals erred in holding that the trial court, in its instructions, did not properly require the jury to find that the Defendant's intoxication proximately caused the victim's death. Appellant submitted no instructions and took no exceptions to instructions given by the trial court. Even if the instructions did contain an error of law, in this record there is no indication of manifest error affecting a constitutional right. We are limited by the record.

Identity of the driver of the vehicle is a question of fact for the jury. The jury could conclude from the substantial and overwhelming evidence that Appellant Salas was the driver.

We reverse the decision of the Court of Appeals, Division Three, which reversed the conviction of Appellant Efrain Salas in the Grant County Superior Court for vehicular homicide.

DURHAM, C.J., DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER, and TALMADGE, JJ., and UTTER, J. Pro Tem., concur.