[No. 52895-5-I. Division One. October 25, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL J. MORGAN, *Appellant*.

*Lenell R. Nussbaum*, for appellant.

*David S. McEachran, Prosecuting Attorney*; and *Philip J. Buri* (of *Buri Funston, P.L.L.C.*), for respondent.

AGID, J. — Daniel Morgan appeals his conviction of vehicular homicide. He contends the trial court erred by instructing the jury that: (1) a vehicular homicide conviction requires a causal connection between Morgan's driving and the death, rather than his intoxication and the death; and (2) Morgan's driving must be "a" proximate cause of the death, rather than "the" proximate cause as alleged in the State's charging document. But causation between intoxication and death is not an element of vehicular homicide. And while an instruction requiring the driving to be "a" proximate cause, rather than "the" proximate cause, could potentially confuse a jury, it was harmless here in light of accompanying instructions. We affirm.

## FACTS

Daniel Morgan is a retired fire fighter, paramedic, and Army field artilleryman who was working as an immigration inspector in February 2002. On February 26, 2002, Morgan had the day off and decided to go skiing. He skied for approximately two hours, then sat in his parked truck and drank some wine.[1] Morgan then skied two or three more runs before leaving the resort.

Within an hour after leaving the resort, Morgan's truck crossed into the opposite lane of traffic, struck a car driven by 73-year-old Doris Phillips, and rolled. Phillips died on the scene. Morgan's blood alcohol level, measured shortly

---

[1] Trial testimony indicates that Morgan consumed approximately 32 ounces of wine. Morgan testified that this was the most alcohol he had consumed since he was a teenager.

after the accident, was 0.13 grams of ethanol per 100 milliliters of blood.[2] Morgan was 57 years old and weighed approximately 220 pounds.

Morgan later testified that, while he drove from the resort, the sky was clear but the road was shaded by trees. He remembered driving to the crest of a hill where there was a clearing and then being temporarily blinded by glaring sunlight. The next thing he remembered was lying upside-down in his car covered by broken glass. A police detective testified that the distance between the crest of the hill and the point of impact was 900 feet, and that it would take approximately 12 seconds to travel between those points. The detective also testified that he saw no brake marks between the hill crest and the accident site. Another witness testified that Morgan's truck never braked or slowed during this time.

The State charged Morgan with one count of vehicular homicide. After Morgan's first trial in December 2002, the jury was deadlocked. After a second trial in June 2003, a jury convicted Morgan and the court sentenced him to 38 months' confinement. Morgan now appeals his conviction.

## DISCUSSION

Morgan challenges two of the court's jury instructions. Jury instruction 5, the "to convict" instruction, stated that:

> To convict the defendant of the crime of vehicular homicide, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 26th day of February, 2002, the defendant drove or operated a motor vehicle;
>
> (2) That the defendant's *driving* proximately caused injury to another person;
>
> (3) That at the time of causing the injury, the defendant was operating the motor vehicle while under the influence of intoxicating liquor;

---

[2] The legal level in Washington is 0.08 grams per 100 milliliters.

(4) That the injured person died as a proximate result of the injuries; and

(5) That the acts occurred in the State of Washington.[3]

Morgan challenges this instruction because it requires a causal connection between his *driving* and the victim's death, rather than his *intoxication* and the death. Morgan also challenges instruction 6, which stated that:

> To constitute vehicular homicide, there must be a causal connection between the death of a human being and the *driving* of a defendant so that the *driving* was *a proximate cause* of the resulting death.
>
> The term "proximate cause" means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which the death would not have happened.
>
> *There may be more than one proximate cause of a death.*[4]

Morgan challenges this instruction because, like instruction 5, it requires a causal connection between the victim's death and the defendant's driving, rather than the defendant's intoxication. Morgan also challenges the instruction because it allows the jury to convict Morgan if it finds that the driving was "a" proximate cause of the death, rather than "the" proximate cause. Morgan argues that this directly contradicts the charging document, which accused Morgan of driving a motor vehicle "which was *the* proximate cause of injury to Doris Phillips . . . ."[5]

## I. *The Vehicular Homicide Statute's Proximate Cause Requirement*

■■ Jury instructions satisfy the fair trial requirement when, taken as a whole, they properly inform the jury of the

---

[3] (Emphasis added.) This instruction is almost identical to the pattern instruction for vehicular homicide. *See* 11A WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 90.02, at 155 (2d ed. 1994) (WPIC).

[4] (Emphasis added.)

[5] (Emphasis added.)

law, are not misleading, and permit the parties to argue their theories of the case.[6] If a trial court's decision about a jury instruction is based on a ruling of law, we review it de novo.[7]

Washington's vehicular homicide statute states:

When the death of any person ensues within three years as a proximate result of injury *proximately caused by the driving of any vehicle* by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:

(a) While under the influence of intoxicating liquor or any drug . . . ;

or

(b) In a reckless manner; or

(c) With disregard for the safety of others.[8]

 In *State v. Rivas*, the Supreme Court held that the only causal connection the State needs to prove in a vehicular homicide case "is the connection between the act of driving and the accident."[9] In other words, "causation between intoxication and death is not an element of vehicular homicide."[10] But Morgan argues that once a defendant introduces evidence of a superseding, intervening event, the State must prove a causal connection between the defendant's *intoxication* and the victim's death. Proof of a superseding, intervening event allows an intoxicated defen-

---

[6] *State v. Kennard*, 101 Wn. App. 533, 536-37, 6 P.3d 38 (quoting *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999)), *review denied*, 142 Wn.2d 1011 (2000).

[7] *State v. Souther*, 100 Wn. App. 701, 708, 998 P.2d 350 (citing *State v. Walker*, 136 Wn.2d 767, 773, 966 P.2d 883 (1998)), *review denied*, 142 Wn.2d 1006 (2000).

The State argues that Morgan did not raise this issue below and thus we should review it under a "manifest error" standard. *See* RAP 2.5(a) (an appellate court may refuse to review any claim of error not raised in the trial court unless the error was a "manifest error affecting a constitutional right."). But Morgan's proposed jury instructions and the trial transcript indicate that Morgan did in fact raise the issue below. Therefore we review this issue de novo.

[8] RCW 46.61.520(1) (emphasis added).

[9] 126 Wn.2d 443, 451, 896 P.2d 57 (1995).

[10] *Id.* at 444.

dant to avoid responsibility for the death.[11] It breaks the causal connection between the defendant's act of driving in violation of the statute and the victim's injury, and the intervening act becomes the superseding cause of injury.[12] "[T]o be a superseding cause, the intervening act must have occurred after the defendant's act or omission."[13] In this case, Morgan argued that the blinding sunlight was a superseding, intervening cause of the accident.

Morgan contends that because he submitted evidence about the sunlight, the State must prove that Morgan's intoxication, rather than his driving, caused Phillips' death. Morgan relies on several arguments. First, he argues that *Rivas* does not apply here because it addressed a challenge to a charging document rather than a jury instruction. But this is a distinction without a difference: *Rivas* did not limit its holding to charging documents, but rather interpreted the vehicular homicide statute.

Second, Morgan distinguishes this case from *State v. Salas.*[14] The trial court in *Salas* gave vehicular homicide instructions that required the jury to find a causal connection between the defendant's driving and the death.[15] The Supreme Court said that, under *Rivas*, the instructions were not error.[16] But it went on to note that the defendant did not propose instructions of his own, nor did he object to the improper instruction, and thus, *"[e]ven if the instructions did contain an error of law,* in this record there is no indication of manifest error affecting a constitutional right. We are limited by the record."[17] Morgan argues that, unlike

---

[11] *Souther,* 100 Wn. App. at 708-09 (citing *Rivas,* 126 Wn.2d at 453).

[12] *State v. Roggenkamp,* 115 Wn. App. 927, 945-46, 64 P.3d 92 (citing *State v. McAllister,* 60 Wn. App. 654, 660, 806 P.2d 772 (1991)), *review granted,* 150 Wn.2d 1009 (2003).

[13] *Id.* at 946 (citing *Souther,* 100 Wn. App. at 710).

[14] 127 Wn.2d 173, 897 P.2d 1246 (1995).

[15] *Id.* at 180.

[16] *Id.* at 180-81.

[17] *Id.* at 185 (emphasis added).

the defendant in *Salas*, he objected to the court's instruction, proposed a different instruction, and presented evidence of a superseding, intervening cause. But again, this is a distinction without a difference. Nothing changes the rule of law that Washington's vehicular homicide statute does not require a causal connection between intoxication and the victim's death.

Finally, Morgan points out that under *Rivas*, a superseding, intervening event may be a defense even if the defendant was driving while intoxicated. Indeed, the *Rivas* court noted that an intoxicated defendant could avoid responsibility for a death caused by superseding, intervening events.[18] This is because the vehicular homicide statute requires the State to prove causation, and the causal chain is broken by a superseding, intervening event.[19] But, contrary to Morgan's argument, *Rivas* did not hold or even suggest that evidence of a superseding, intervening event alters the causation requirement.[20]

No case law supports Morgan's assertion that evidence of a superseding, intervening cause changes the elements of the crime to require the State to prove that Morgan's intoxication, rather than his driving, caused the death. And even if it did, failure to give such an instruction would be harmless error because the court properly instructed the jury that a superseding, intervening cause disproves the causation requirement. Jury instruction 7 stated: "The conduct of a defendant is not the 'proximate cause' of death if death is caused by a superseding, intervening event. A superseding, intervening event is an event independent of the defendant's conduct that occurs without which death would not have occurred." And instruction 6 makes it clear

---

[18] *Rivas*, 126 Wn.2d at 453.

[19] *Id.*

[20] Morgan also argues that the *Rivas* holding contradicts the pattern jury instruction for proximate cause in the homicide context. The pattern instruction requires a "causal connection between the death of a human being and the *criminal conduct* of a defendant." WPIC 25.02, at 276 (2d ed. 1994) (emphasis added). But *Rivas* does not necessarily contradict this instruction, as the "criminal conduct" to which it refers is the defendant's driving in violation of the statute.

that the proximate cause element is not met if a "new independent cause" breaks the direct sequence between the act and the death. In other words, if the jury had found sufficient evidence to prove that blinding sunlight caused the accident, it could not have convicted Morgan because the State would not have proved the proximate cause element of the crime.

■ As a corollary argument, Morgan contends that the State bears the burden of disproving the superseding, intervening event. But this argument is unnecessary, as the burden to disprove the superseding event is automatically assumed by the State's other burdens of proof:

> the State assumed the burden of proving beyond a reasonable doubt all the elements of vehicular homicide . . . . Thus, by proving that [the defendant's] actions were the proximate cause of the injuries and the death, the State necessarily proved that [the defendant's] actions were not broken by any new independent cause . . . . Assuming the burden of proving the absence of a superseding cause is on the State, the State met that burden by proving that [the defendant's] actions were a proximate cause of the injuries and death.[21]

The instructions requiring the jury to find a causal connection between Morgan's driving and the victim's death properly informed the jury of the law. The trial court did not err.

## II. *"A" Proximate Cause Versus "The" Proximate Cause*

■■ Morgan did not object to instruction 6 at trial. In fact, he proposed a jury instruction that contained identical language to the language he now challenges. Under the invited error doctrine, a defendant may not challenge on appeal a jury instruction that he proposed.[22] But in a criminal case, when defense counsel offers an inadequate jury instruction, we reach the merits of the challenge in order to determine whether the defendant received ineffec-

---

[21] *Roggenkamp*, 115 Wn. App. at 948.

[22] *State v. Bradley*, 141 Wn.2d 731, 736, 10 P.3d 358 (2000) (citing *State v. Neher*, 112 Wn.2d 347, 352-53, 771 P.2d 330 (1989)).

tive assistance of counsel.[23] Here, Morgan argues that his counsel acted ineffectively by proposing the challenged instruction.

■ To establish ineffective assistance of counsel, Morgan must show that his counsel's representation fell below an objective standard of reasonableness based on all of the circumstances and that he was prejudiced by the deficient representation.[24] Proposing a legally inaccurate jury instruction constitutes deficient representation if the instruction would have permitted the jury to find the defendant guilty of a crime that he could not have committed under the facts the State proved.[25]

■ Here, Morgan argues that the jury instruction violated due process because it allowed the jury to convict him if it found his driving to be "a" proximate cause of the death even though the charging document refers to his driving as "the" proximate cause of the death. Therefore, Morgan reasons, the instruction relieved the State of its burden to prove the crime as charged. A court must instruct the jury in a manner that requires the State to prove every essential element of the crime.[26] Here, the jury instructions required the State to prove every essential element of vehicular homicide.[27] And instruction 5's requirement that Morgan's driving be "a" proximate cause rather than "the" proximate cause is legally accurate, as there may be more

---

[23] *Id.* (citing *State v. Aho*, 137 Wn.2d 736, 745-46, 975 P.2d 512 (1999)).

[24] *Id.* (citing *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995)).

[25] *Aho*, 137 Wn.2d at 745 (citing *State v. Ermert*, 94 Wn.2d 839, 849-50, 621 P.2d 121 (1980)).

[26] *State v. Cronin*, 142 Wn.2d 568, 579-80, 14 P.3d 752 (2000) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Jackson*, 137 Wn.2d 712, 727, 976 P.2d 1229 (1999); *State v. Acosta*, 101 Wn.2d 612, 615, 683 P.2d 1069 (1984); *State v. McCullum*, 98 Wn.2d 484, 493-94, 656 P.2d 1064 (1983); *State v. Green*, 94 Wn.2d 216, 224, 616 P.2d 628 (1980)).

[27] Vehicular homicide jury instructions must place the burden on the State to prove that Morgan operated a motor vehicle while under the influence of intoxicating liquor, proximately causing the death of the victim. *See* RCW 46.61.520; *Salas*, 127 Wn.2d at 181. Instruction 5 satisfies this requirement.

than one proximate cause of a death.[28] The fact that the jury instruction's language differs slightly from the charging document does not violate due process because the court required the State to prove every element of the crime.

We are nevertheless concerned that the "*a* proximate cause" language, combined with instruction 6's statement that "[t]here may be more than one proximate cause" could, under some circumstances, allow a jury to convict a defendant even if it finds that the defendant proved a superseding, intervening cause.[29] This is because a jury could infer that several events, *including* a superseding, intervening event, could all be considered proximate causes. But even if it were error to include the "a proximate cause" and "more than one proximate cause" language when the defendant raises a superseding, intervening event defense, it would be harmless in this case. The court clearly instructed the jury that a superseding, intervening cause relieves the defendant of liability because it breaks the causal chain. The court also clearly instructed the jury that the defendant was guilty only if his driving produced the death in a direct sequence, unbroken by any new independent cause. Given these instructions, the jury would not have convicted Morgan if it had not first rejected his blinding sunlight defense. The challenged instruction did not permit the jury to convict him of a crime that he could not have committed under the facts the State proved.

Morgan also argues the jury instructions improperly permitted the jury to convict on an uncharged alternative basis. It is true that a court may not instruct the jury about

---

[28] *See, e.g., Souther,* 100 Wn. App. at 709 n.2; *State v. Parker,* 60 Wn. App. 719, 726-27, 806 P.2d 1241 (citing *Neher,* 112 Wn.2d at 352; *State v. Jacobsen,* 74 Wn.2d 36, 37, 442 P.2d 629 (1968)), *review denied,* 116 Wn.2d 1025 (1991).

[29] The pattern jury instruction for proximate cause in the homicide context includes this "a proximate cause" and "more than one proximate cause" language. WPIC 25.02. But the fact that a jury instruction is modeled from a pattern instruction does not render it immune from judicial scrutiny. *See Cronin,* 142 Wn.2d at 579 (accomplice liability jury instruction was legally deficient despite the fact that it was modeled on a pattern instruction); *State v. Giedd,* 43 Wn. App. 787, 793, 719 P.2d 946 (1986) ("a pattern instruction is not a talisman that wards off judicial scrutiny . . . .").

an uncharged statutory alternative because it violates the defendant's right to notice of the charged crime.[30] But that is not what happened here. In this case, both the information and the instructions were limited to vehicular homicide committed while the driver was intoxicated. The difference between the jury instructions and the charging document is not that they contain different, alternative methods to committing vehicular homicide. Rather, one contains an indefinite article while the other contains a definite article. This difference, as discussed above, is immaterial.

We affirm.

KENNEDY and APPELWICK, JJ. concur.

Review denied at 154 Wn.2d 1018 (2005).

---

[30] *State v. Doogan*, 82 Wn. App. 185, 188, 917 P.2d 155 (1996) (citing *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988)).