# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49995-9-II |
| Respondent, | |
| v. | |
| DEAN MASAO IMOKAWA, | PUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Dean M. Imokawa appeals his convictions for vehicular homicide and vehicular assault.  Imokawa argues that due process requires that the trial court instruct the jury that the State bears the burden to prove the absence of a superseding cause.  Because the existence of a superseding cause negates the essential element of proximate cause, we hold that due process requires the State to prove the absence of a superseding cause when it is properly raised as a defense.  Accordingly, the trial court erred by failing to instruct the jury that the State had the burden to prove the absence of a superseding cause.  We reverse.

Imokawa also argues that the charges should be dismissed with prejudice because there was insufficient evidence to support the jury's verdicts finding Imokawa guilty of vehicular homicide and vehicular assault.  Because there was sufficient evidence to support the jury's verdicts, dismissal with prejudice is not the proper remedy and we remand for further proceedings consistent with this opinion.

FACTS

On April 2, 2015, the GMC truck Imokawa was driving collided with Linda Dallum's Kia Sorrento. Eleanor Tapani, Dallum's mother, was a passenger in her car. Both Dallum and Tapani suffered serious injuries in the collision. Dallum was in a wheelchair for several months. Tapani died. The State charged Imokawa with vehicular homicide, vehicular assault, and reckless driving.

At Imokawa's jury trial, Nicholas Grier testified that, on April 2, he was driving his Land Rover north on State Route 503. Grier was driving in the left lane when he observed Imokawa's truck. Grier testified that Imokawa pulled within a few feet of the back bumper of his Land Rover and flashed its headlights. Grier tapped his brakes and waved his hand at Imokawa. Imokawa backed off as the vehicles approached a stoplight.

The light changed and the vehicles drove through the intersection without coming to a complete stop. Imokawa pulled up closely behind Grier's vehicle again. Imokawa slowed down and then pulled into the right lane. Imokawa passed Grier and then signaled that he was going to change lanes into the left lane. As Imokawa pulled in front of Grier, he hit Grier's vehicle. The impact turned Imokawa's truck sideways into oncoming traffic and it collided with Dallum's Kia. Then Imokawa's truck struck the guardrail.

Grier testified that there was another vehicle in front of him when Imokawa attempted to make the lane change. Grier did not believe that it was possible for Imokawa to make the lane change. Grier also testified that he did not speed up as Imokawa attempted to pass him.

Imokawa testified to almost the same series of events as Grier. However, Imokawa testified that he was sure that he had enough space to make the lane change safely. Imokawa

2

testified that the collision occurred because, as he made the lane change, Grier accelerated to prevent him from passing and hit the back of his vehicle.

John Gain observed both vehicles prior to the collision. Gain testified that he was driving in the left lane when Imokawa pulled into the right lane to pass him. Gain then moved over into the right lane. Gain testified that he observed Imokawa pull up closely behind Grier and continue to follow him at a very close distance. Gain also observed Imokawa attempt to pass Grier. Gain testified that he thought the lane change was "tight." II Verbatim Report of Proceedings (VRP) at 305. Based on his observations, he did not think that Imokawa was going to be able to make the lane change. Gain could not tell whether Grier accelerated as Imokawa attempted to make the lane change.

Steven Wicklander testified that he was driving in front of Grier at the time of the collision. Wicklander testified that he pulled in front of Grier and set his cruise control to 60 miles per hour. Wicklander was the leader of a group of vehicles all travelling about the same speed. Wicklander observed Imokawa approach in the left lane and noted that he was driving faster than the other vehicles in the lane. When Wicklander checked his mirrors again he saw Imokawa pull into the right lane to pass Grier. Wicklander checked his mirrors again and saw that Imokawa's truck was sideways in front of Grier's Land Rover.

Detective Justin Maier testified that several troopers from the Washington State Patrol responded to investigate the accident. Detective Maier was the lead detective investigating the collision. Based on all the evidence, Maier opined that Imokawa's truck hit the Land Rover and that the Land Rover had not sped up before hitting Imokawa's truck.

3

At trial, Imokawa argued that Grier's acceleration into Imokawa's vehicle was a superseding cause of the accident, and thus, Imokawa proposed modified versions of the Washington Pattern Jury Instructions (WPIC). Imokawa proposed the following jury instruction defining superseding cause:

> If you are satisfied beyond a reasonable doubt that the driving of the defendant was a proximate cause of substantial bodily injury to another, or death of another, it is not a defense that the driving of another may also have been a proximate cause of the substantial bodily harm to, or death of, another.

> However, if a proximate cause of substantial bodily harm or death was a new independent intervening act of another which the defendant, in the exercise of ordinary care, should not reasonably have anticipated as likely to happen, the defendant's act is superseded by the intervening cause and is not a proximate cause of the substantial bodily harm or death. An intervening cause is an action that actively operates to produce harm to another after the defendant's act has begun.

> However, if in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening cause, that cause does not supersede the defendant's original act and the defendant's act is a proximate cause. It is not necessary that the sequence of events or the particular injury be foreseeable. It is only necessary that the substantial bodily harm or death fall within the general field of danger which the defendant should have reasonably anticipated.

> The State has the burden of proving beyond a reasonable doubt both (1) that conduct by the defendant was a proximate cause and, (2) that the conduct of Nicholas Grier did not constitute a superseding cause of the collision which resulted in the injuries and the death that occurred in this case.

Clerk's Papers (CP) at 28-29. Imokawa also proposed a "to-convict" instruction for vehicular homicide which included the following element:

> (4) That the conduct of Nicholas Grier was not a superseding cause of the injuries sustained by Eleanor Tapani;

4

CP at 30. And Imokawa proposed a "to-convict" instruction for vehicular assault which included the following element:

> (4) That the conduct of Nicholas Grier did not constitute a superseding cause of the injuries sustained by Linda Dallum; and

CP at 33.

The trial court declined to give Imokawa's proposed instructions. Instead, the trial court gave the standard WPIC pattern jury instructions including the standard pattern jury instruction on proximate cause. 11A WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 90.07, 90.08, at 276, 278 (4th ed. 2016). The trial court's instructions did not include language requiring the State to prove that Grier's conduct was not a superseding cause of the injuries to Dallum or Tapani.

The jury found Imokawa guilty of vehicular homicide and vehicular assault. By special verdict, the jury found that Imokawa was operating his vehicle with disregard for the safety of others. However, the jury also found that Imokawa was not guilty of reckless driving. The trial court sentenced Imokawa to a standard range sentence. Imokawa appeals.

ANALYSIS

I. DUE PROCESS

Imokawa argues that the existence of a superseding cause negates the essential element of proximate cause and, therefore, the State bears the burden of proving the absence of a superseding cause beyond a reasonable doubt. We agree.

The due process clause of the Fourteenth Amendment of the United States Constitution requires the State to prove every fact necessary to constitute the crime charged beyond a reasonable doubt. U.S. CONST. amend XIV, § 1; *State v. W.R.*, 181 Wn.2d 757, 761-62, 336 P.3d 1134 (2014).

5

As a result, the State cannot require the defendant to disprove any fact that constitutes the crime charged. *W.R.*, 181 Wn.2d at 762. Accordingly, a defendant's right to due process may be violated if he or she is burdened with proving a defense. *See W.R.*, 181 Wn.2d at 762-63.

To determine whether the State may allocate the burden of proving a defense, we examine whether the defense negates an essential element of the crime charged. *W.R.*, 181 Wn.2d at 762; *State v. Acosta*, 101 Wn.2d 612, 615, 683 P.2d 1069 (1984). If the defense negates an essential element of the crime charged, then due process requires that the burden be allocated to the State. *Acosta*, 101 Wn.2d at 616. As a result, the State must prove the absence of the defense as part of proving all essential elements of the crime beyond a reasonable doubt. *Acosta*, 101 Wn.2d at 616 ("Since proof of self-defense negates knowledge, due process and our prior cases require us to hold that the State must disprove self-defense in order to prove that the defendant acted unlawfully.").

To determine whether a defense negates an essential element, we analyze each element of the crime charged. *Acosta*, 101 Wn.2d at 616. The essential elements of vehicular homicide are: (1) operating a motor vehicle (a) while intoxicated, (b) in a reckless manner, or (c) with disregard for the safety of others; (2) the driving was the proximate cause of injury to any person; and (3) the person died as a proximate result of the injury. RCW 46.61.520(1). The essential elements of vehicular assault are the same except that the driving must be the proximate cause of substantial bodily harm to another rather than death. RCW 46.61.522(1).

Because a superseding cause is related to an act other than the defendant's, a superseding cause does not relate to the defendant's operation of a motor vehicle or the resulting injury or death. The salient issue is whether a superseding cause negates the essential element of proximate cause.

"The key to whether a defense necessarily negates an element is whether the completed crime and the defense can coexist." *W.R.*, 181 Wn.2d at 765. For example, our Supreme Court has explained that self-defense necessarily negated the essential element of knowledge for second degree assault because it is "impossible for one who acts in self-defense to be aware of facts or circumstances 'described by a statute defining an offense.'" *Acosta*, 101 Wn.2d at 616 (quoting RCW 9A.08.010(1)(b)(i)). Similarly, consent negates the essential element of forcible compulsion because:

> The statute defines "forcible compulsion" as a "physical force which *overcomes resistance*, or a threat . . . that *places a person in fear of death or physical injury* to herself or himself or another person, or in fear that she or he or another person will be kidnapped." RCW 9A.44.010(6) (emphasis added). As defined, forcible compulsion contemplates force that overcomes actual resistance or threats that place a person in actual fear. There can be no forcible compulsion when the victim consents, as there is no resistance to overcome. Nor is there actual fear of death, physical injury, or kidnapping when the victim consents.

*W.R.*, 181 Wn.2d at 765 (alteration in original).

Here, it is impossible for the defendant's driving to be a proximate cause of injury or death and for there to also be a superseding cause of the injury or death. In *State v. Rivas*, our Supreme Court explained,

7

> Under RCW 46.61.520[,] an intoxicated defendant may still avoid responsibility for a death which results from his or her driving if the death is caused by a superseding, intervening event. In crimes which are defined to require specific conduct resulting in a specified result, the defendant's conduct must be the "legal" or "proximate" cause of the result. Before criminal liability is imposed, the conduct of the defendant must be both (1) the actual cause, and (2) the "legal" or "proximate cause" of the result.

126 Wn.2d 443, 453, 896 P.2d 57 (1995) (quoting Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.12, at 390 (1986)).

And *State v. Roggenkamp* explained the interaction between a proximate cause, an intervening cause, and a superseding cause. 115 Wn. App. 927, 64 P.3d 92 (2003), *aff'd*, 153 Wn.2d 614 (2005). "An intervening cause is a force that operates to produce harm *after* the defendant has committed the act or omission." *Roggenkamp*, 115 Wn. App. at 945. However, the existence of an intervening act alone is not sufficient to relieve the defendant of criminal liability— in order to be considered a superseding cause, an intervening cause must be one that is not reasonably foreseeable. *Roggenkamp*, 115 Wn. App. at 945. If there is a superseding cause, "then there is a break in the causal connection between the defendant's negligence and the plaintiff's injury." *Roggenkamp*, 115 Wn. App. at 945-46.

The defendant's driving is no longer a proximate cause of the injury or death if there is a superseding cause that breaks the causal connection. It is possible for an intervening cause to coexist with the defendant's driving as a proximate cause of the injury or death. However, it is impossible for the defendant's driving to be a proximate cause of the injury or death *and* for there to also be a superseding cause of the injury or death. Therefore, the two cannot coexist and a superseding cause negates proximate cause.

The State argues that this issue has already been resolved by *Roggenkamp* and *State v. Morgan*, 123 Wn. App. 810, 99 P.3d 411 (2004). However, *Morgan* is not controlling because *Morgan* did not address the due process issue of the allocation of the burden of proof. In *Morgan*, the court addressed whether the allegation of the existence of a superseding cause required the State to prove that the defendant's intoxication, rather than the defendant's driving, was a proximate cause of the death. *Morgan*, 123 Wn. App. at 813-17. *Morgan* also addressed whether the jury instruction language using "*a* proximate cause" as opposed to "*the* proximate cause" violated due process. 123 Wn. App. at 819-20 (emphasis added).

*Roggenkamp* actually addressed the allocation of burden of proof. 115 Wn. App. at 947. However, the court explicitly declined to analyze whether a superseding cause negated the essential element of a proximate cause because our Supreme Court "expressed 'substantial doubt' about the correctness" of the "'negates' analysis." 115 Wn. App. at 947 (citing *State v. Camara*, 113 Wn.2d 631, 639, 781 P.2d 483 (1989).

In *W.R.*, our Supreme Court expressly overruled the holding in *Camara* and held that the appropriate test for determining the allocation of the burden of proof for the purpose of due process is "the negates an essential element analysis." 181 Wn.2d at 763-65. *Roggenkamp's* analysis of the due process issue and the allocation of the burden of proof are in direct conflict with recent Supreme Court precedent, *W.R.* Thus, we follow the explicit statement in *W.R.* and analyze whether a superseding cause negates a proximate cause to determine the allocation of the burden of proof.

Because we hold that a superseding cause negates the element of proximate cause, due process requires that the burden of proof be allocated to the State. Therefore, when a defendant adequately raises the existence of a superseding cause, as Imokawa did here, the State bears the burden to prove the absence of a superseding cause beyond a reasonable doubt.

## II. JURY INSTRUCTIONS

Imokawa argues that the trial court's jury instructions did not adequately inform the jury of the State's burden because the instructions did not unambiguously inform the jury that the State had the burden to prove the absence of a superseding cause. Imokawa asserts that the trial court was required to give his proposed instructions stating that the State had to prove that "the conduct of Nicholas Grier did not constitute a superseding cause of the collision." Br. of Appellant at 20; CP at 29. We hold that the jury instructions defining superseding cause and proximate cause in this case were not adequate to inform the jury of the State's proper burden of proof.

When the State has the burden to prove the absence of a defense, the jury must be informed "in some unambiguous way" that the State must prove the absence of the defense beyond a reasonable doubt. *Acosta*, 101 Wn.2d at 621. "[A] specific instruction is preferable, but failure to provide one is not reversible *per se* so long as the instructions, taken as a whole, make it clear that the State has the burden." *Acosta*, 101 Wn.2d at 621.

Here, we hold that the jury instructions as a whole did not adequately inform the jury that the State had the burden to prove the absence of a superseding cause. The jury was instructed that the State had to prove that Imokawa's driving was a proximate cause of the death or injury. And the jury was instructed that "if a proximate cause of the death was a new independent intervening act of the deceased or another which the defendant, in the exercise of ordinary care, should not

10

reasonably have anticipated as likely to happen, the defendant's act is superseded by the intervening cause and is not a proximate cause of the death." CP at 57. However, the jury was instructed not to consider the existence of a superseding cause until after it had determined that the State proved proximate cause beyond a reasonable doubt. CP at 57 ("If you are satisfied beyond a reasonable doubt that the driving of the defendant was a proximate cause of the death . . . ."). And the instruction regarding superseding cause focuses primarily on what is *not* a defense to proximate cause.

Considering the jury instructions as a whole, there is a distinct possibility that the burden of proof was unclear to the jury because the instructions imply that a superseding cause is not considered until after the State has already met its burden to prove all of the essential elements. And the emphasis in the jury instructions on what is *not* a defense or what is *not* a superseding cause made it appear that a superseding cause has to be affirmatively proven by Imokawa rather than the actual burden of the State to prove the absence of a superseding cause. Ultimately, the jury instructions in this case did not inform the jury "in some unambiguous way" that the State had the burden to prove the absence of a superseding cause. *Acosta*, 101 Wn.2d at 621. Therefore, we hold that the jury instructions violated due process by failing to inform the jury of the State's burden to prove the absence of a superseding cause beyond a reasonable doubt.

Although the jury instructions that were given in this case violated due process, the trial court did not err by refusing to give Imokawa's proposed "to convict" jury instructions. The "to convict" instructions must include all essential elements of the crime. *State v. DeRyke*, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003). However, Imokawa's proposed "to convict" jury instructions added an additional nonessential element to the offenses of vehicular homicide and vehicular

11

assault by specifically referencing that Grier's driving was not a superseding cause of the injuries or death. Although a superseding cause negates an essential element of the crime and the State must prove the absence of a superseding cause beyond a reasonable doubt, the absence of a superseding cause does not become an essential element of the crime. The essential element of the crime is still that the defendant's driving is the proximate cause of the injury or death. Therefore, although the jury must be instructed in some way that the State must prove the absence of the alleged superseding cause, the trial court did not err by refusing to give a "to convict" instruction that included an additional nonessential element of the crimes charged.[1]

### III. HARMLESS ERROR

Because we hold that the jury instructions in this case were improper, we must determine whether the error was harmless beyond a reasonable doubt. Because Imokawa presented evidence that could establish a superseding cause and ultimately the issue was a question of credibility for the jury, we hold that the erroneous jury instructions were not harmless.

Jury instructions that violate a defendant's right to due process require reversal unless the State can prove that the error was harmless beyond a reasonable doubt. *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002).

---

[1] This is the approach adopted for self-defense instructions. The instruction defining self-defense states,

> The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

11 WPIC 16.02, at 248. However, the "to convict" instructions do not change because the defendant claims self-defense. *See e.g.* 11 WPIC 26.02, at 383; 11 WPIC 26.04, at 388.

Here, Imokawa presented evidence that could establish a superseding cause because Imokawa testified that Grier accelerated and hit his car when he was changing lanes. This evidence was disputed because Grier testified that he did not accelerate and hit Imokawa's truck. The contested issue in the case was whether Grier's conduct was a superseding cause that absolved Imokawa of criminal liability for the death and injury in this case. And that issue was primarily a question of credibility left to the exclusive province of the jury. Because the jury was not properly instructed on the burden of proof, that the State has the burden to prove the absence of a superseding cause beyond a reasonable doubt, there is a reasonable possibility that the jury did not weigh the credibility of Grier's and Imokawa's testimonies based on the appropriate legal standard. Accordingly, the State failed to show that the error in the jury instructions was harmless beyond a reasonable doubt.

## IV. SUFFICIENCY OF THE EVIDENCE

Imokawa also argues that there was insufficient evidence to support the jury's verdict because his miscalculation of the space for a lane change was simple negligence and that the State failed to prove that he was operating a motor vehicle with disregard for the safety of others. We disagree.

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2 at 201. All reasonable inferences are drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, 119 Wn.2d at 201. "Credibility

13

determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To prove vehicular homicide and vehicular assault, the State had to prove that Imokawa operated a motor vehicle with disregard for the safety of others and that Imokawa's driving was the proximate cause of substantial bodily harm or death. RCW 46.61.520, .522. Disregard for the safety of others means:

> an aggravated kind of negligence or carelessness, falling short of recklessness but constituting a more serious dereliction than ordinary negligence. Ordinary negligence is the failure to exercise ordinary care. Ordinary negligence is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances. Ordinary negligence in operating a motor vehicle does not render a person guilty of vehicular homicide.

CP at 55.

Here, there was sufficient evidence to prove that Imokawa operated his vehicle with disregard for the safety of others because the jury is permitted to consider all the circumstances leading to Imokawa's lane change to determine whether Imokawa's misjudgment of space for the lane change was aggravated negligence. The State presented evidence that Imokawa was driving faster than the other vehicles on the road. And Grier testified that Imokawa pulled up dangerously close behind him on two occasions prior to attempting the lane change. Within the entire context of Imokawa's driving the morning of the collision, there was sufficient evidence for the jury to find that Imokawa operated his vehicle with disregard for the safety of others.

We hold that the jury instructions in this case violated due process by failing to inform the jury that the State has the burden to prove the absence of a superseding cause beyond a reasonable doubt. Accordingly, we reverse Imokawa's convictions for vehicular homicide and vehicular assault and remand to the trial court for further proceedings consistent with this opinion.

SUTTON, J.

We concur:

MAXA, C.J.

WORSWICK, J.