FILED
COURT OF APPEALS
DIVISION II

2015 APR 28 AM 8: 36

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | No. 45198-1-II |
| Respondent, | | |
| v. | | |
| ANDRE TAYLOR, | | UNPUBLISHED OPINION |
| Appellant. | | |

MELNICK, J. — Andre Taylor appeals his convictions for assault in the second degree and attempted kidnapping in the second degree, both with sexual motivation. Taylor argues the "to convict" instruction for assault in the second degree failed to accurately instruct the jury, the trial court impermissibly commented on the evidence, the State committed prosecutorial misconduct, the trial court abused its discretion when it admitted evidence, and cumulative errors denied him a fair trial. We reject Taylor's claims and affirm.

## FACTS

### I. SUBSTANTIVE FACTS

At approximately 4:00 A.M. on February 17, 2012, H.H. left her job as floor supervisor at McDonald's. Because of the unavailability of a ride, she decided to walk to her manager's nearby house. H.H. noticed a truck following her, and ignored the driver, Taylor, when he gestured to her. In an attempt to avoid him, H.H. crossed the street. Shortly thereafter, the truck came around a corner and struck H.H. She "folded" completely underneath the truck. Report of Proceedings (RP) (May 29, 2013) at 30. Prior to impact, H.H. did not notice Taylor honk the horn, apply the brakes, or attempt to swerve out of the way. Nothing in the immediate area obstructed Taylor or prevented him from swerving to avoid H.H.

After impact, Taylor put the truck in reverse, backed it off H.H., and then stopped. Taylor exited his truck and picked up H.H. He dropped her when H.H. struggled.

A witness approached the scene and H.H. requested that someone call 911; however, neither Taylor nor the witness made any effort to make the call. H.H.'s phone, which she had taken out of her pocket prior to impact, laid in pieces on the ground. H.H. managed to put her phone back together and called 911. Taylor left in his vehicle before medical personnel and law enforcement arrived.

Medical help arrived and transported H.H. to the hospital. As a result of being struck by the truck, H.H. sustained significant injuries including hemorrhaging in her eyes, three broken ribs, a bruised lung, a broken clavicle, a complex hip fracture, dislocated hip, broken tailbone, and a broken pelvis. She underwent two surgeries, remained hospitalized for three weeks, and resided in a rehabilitation facility for an additional week or two.

Law enforcement investigated and determined Taylor and his truck were involved. Following his arrest, Taylor told Detectives Ryan Larsen and John Bair that he had followed H.H. and tried to talk to her. Taylor admitted that he consumed alcohol and smoked crack cocaine prior to striking H.H., and that he likes "companionship" when he's high. RP (June 3, 2013) at 43. He told the detectives that the brakes on his vehicle weren't working, but that the emergency brake does work so he used that as his primary brake. Later in the interview, he said that the mechanical condition of his vehicle did not cause him to strike H.H., but "'[t]he reason was accidental.'" RP (June 3, 2013) at 57.

The State charged Taylor with assault in the first degree with sexual motivation and attempted kidnapping in the second degree with sexual motivation.

II.   PRETRIAL

The State sought to admit an interview between Detective Bair and Taylor. Taylor moved the court in limine to redact the following exchange between Detective Bair and Taylor that occurred during the interview:

> BAIR:  And we ask[ed] you what you think she was thinking and you told us a response that involved two words. What were those words?
> TAYLOR: I don't want to say that. I just—I feel like bodily harm. I mean, uh, I—I would—if I was in that . . .
> BAIR: Well, Andre, let me ask you this. If I say the words that you said to me, and you correct me if I'm wrong. Did you say the word 'rape'? And did you say the word 'kill'? As—as a response, you asked us that y—she'd be thinking two words. Are those two words that I just said, is that an incorrect representation of what you said earlier?
> TAYLOR: No, that's not incorrect.

Clerk's _Papers (CP) at 159-160. Taylor argued that the statement was speculative and a layperson's opinion on his guilt or innocence. The State argued that the statements were Taylor's interpretation of his own conduct and were the "statements made by a party-opponent." CP at 207. The trial court noted that while "[w]itnesses are generally not permitted to speculate or express their personal beliefs about the defendant's guilt or innocence," here Taylor was describing his "own interpretation as to how his own behavior could have been interpreted or perceived." RP (Sept. 24, 2012) at 7. Accordingly, the trial court denied Taylor's proposed redaction.

III.   TRIAL

During direct examination of Detective Larsen, the State elicited testimony regarding Taylor's statements to Detectives Larsen and Bair:

> [STATE]: Was there a discussion about what the victim would have thought based on his actions?
> [DETECTIVE LARSEN]: Yes. I specifically asked him, 'What do you think she would have said if asked about what you were going to do to her?' And he looked up and he said 'stalk.'
> [TAYLOR]: Objection. Speculation.
> THE [TRIAL] COURT: Overruled.

BY [STATE]: Go ahead.
[DETECTIVE LARSEN]: He said, 'Stalk. She said 'stalk' to me.' And then I said, 'What do you think she was going to—what do you think she thought you were going to do to her?' And Taylor said, 'Kill, rape.' And I asked him, 'Do you think she was scared?' And he said, 'If I was in her shoes alone, I'd be scared.'

RP (June 3, 2013) at 43-44.

The jury heard testimony that prior to the incident, Taylor told a friend that he was "'hornier than [expletive].'" RP (June 3, 2013) at 159. The jury also heard testimony from two of Taylor's cellmates, James Herness and Curtis Hudson. Herness testified that, following his arrest, Taylor told Herness that he had mistaken H.H. for a prostitute and that "[s]omething came over [him]. [He] just couldn't help [him]self." RP (June 4, 2013) at 109. Additionally, Hudson testified Taylor told him that "he was going to have his way with [H.H.]" if he could get her back to his friend's home. RP (June 5, 2013) at 68. When he described the incident to Hudson, Taylor used the term "ran her down." RP (June 5, 2013) at 69. Taylor testified that he hoped to engage in sexual conduct with H.H. on the night of the incident, that he went to the area of the incident to locate a prostitute, and that he believed H.H. was a prostitute.

During cross-examination of Taylor, the State concentrated on Taylor's inconsistencies between his testimony and his statement to law enforcement, Herness, and Hudson. Outside the presence of the jury, the State argued to the trial court that the defense changed tactics during the course of the trial and that the State intended to inquire as to inconsistencies between Taylor's testimony, his previous statements, and what his attorney represented during opening statements and motions in limine. The trial court allowed the State to inquire of Taylor regarding the inconsistencies.

During cross-examination, the following exchange took place between the State and Taylor:

> [STATE]: In fact, you've had a chance to review your taped statement as well; right?
> [TAYLOR]: I have.
> [STATE]: Nowhere in that did you ever once say you were looking for a prostitute; right?
> [TAYLOR]: Correct.
> [STATE]: You wanted to have sex with her that night, or that morning; right?
> [TAYLOR]: Hopefully.
> [STATE]: Because that's what people do with prostitutes after 4 a.m.; right?
> [TAYLOR]: Yes.
> [STATE]: And we also know that because your attorney said in her opening statement you were hoping to have sex with her that morning; right?
> [TAYLOR]: Correct.
> [STATE]: Well, how come you told the detectives that you didn't want to have sex with her then?
> [TAYLOR]: I don't know.
> [STATE]: What do you mean, you don't know? You told the detectives that you didn't want to have sex with her that morning; right?
> [TAYLOR]: That's what I told them.
> [STATE]: That was a lie, wasn't it?
> [TAYLOR]: No.
> [STATE]: Well . . . how do you juxtapose the two? . . .
> [TAYLOR]: Because there was a point that I wanted to have sex and there was a point I didn't. That's what I was talking about.
> [STATE]: At what point did that change, Mr. Taylor?
> [TAYLOR]: I figured out she wasn't a prostitute.
> [STATE]: Really? Because your attorney stood up in her opening statement and said that you contacted her because she was in trouble and that you were hoping maybe that would lead to sex. Isn't that what she said?

RP (June 11, 2013) at 21-23. Before Taylor answered, his counsel objected on the basis that opening statements are not evidence. The court removed the jury and, after argument, the trial court sustained the objection. When the jury returned, the State further inquired, "Mr. Taylor, you spoke to your attorney about whether or not you wanted to have sex." RP (June 11, 2013) at 24. Before Taylor answered, his counsel objected based on a violation of the attorney-client privilege.

5

45198-1-II

The trial court sustained the objection. The State continued to question Taylor about his prior inconsistent statements.

## IV.    CLOSING ARGUMENT

During closing arguments, the State and Taylor focused on the issue of whether Taylor intended to strike H.H. with his vehicle. The State first argued

> He ran her down, and so if you know, based on the evidence, that he intentionally acted, then the State has met its burden with regard to Count I and Count II because common sense tells you there's no other explanation for the other elements, right? To convict him of [a]ssault in the [f]irst [d]egree on or about the 17th day of February 2012, he assaulted H.H. and the assault requires the intentional conduct.

RP (June 12, 2013) at 37. The State then moved on to discuss intent to inflict bodily harm and stated, "If you intend to run somebody over with a truck, you intend to inflict great bodily harm."

RP (June 12, 2013) at 37. Additionally, the State argued

> [Taylor] is going to suggest, 'Well, if he was intending to rape her, he couldn't have been intending to inflict great bodily harm. That's inconsistent.' . . . You have a lesser crime of [a]ssault in the [s]econd [d]egree with [s]exual [m]otivation, right? The only difference is that you intentionally assaulted, right? That's the issue that I think is in this case, and that he recklessly inflicted substantial bodily harm as a result of the assault. Well, if he didn't intend great bodily harm, he certainly recklessly inflicted substantial bodily harm.

RP (June 12, 2013) at 38.

During defense closing argument, Taylor's attorney stated, "Counsel stated to you during closing [argument] just moments ago that for [a]ssault 2, the State only has to prove that Mr. Taylor recklessly inflicted. Wrong." RP (June 12, 2013) at 44.

In response, the State argued

> [Taylor] suggested that I said [a]ssault in the [s]econd degree did not require intent. That was her argument, that I, for some reason, said it didn't require intent. Well, I said in my opening statement and I said in my closing statement that that's the sole issue in this case. It applies to every assault. She said that her client clearly committed [a]sault 3. That's what she said because he negligently caused injury. Well, if he committed [a]ssault 3, then he certainly committed [a]ssault 2, because

6

in order to commit [a]ssault 2, the only difference is that he has to act recklessly instead of negligently and reckless simply requires, it's Instruction No. 18, that the [d]efendant knows of and disregards a substantial risk that a wrongful act may occur and that this disregards a gross deviation from the conduct that a reasonable person would exercise.

RP (June 12, 2013) at 93-94. Taylor did not object.

V.      JURY INSTRUCTIONS AND DELIBERATIONS

Taylor did not propose a jury instruction on assault in the second degree. Without objection, the trial court submitted following lesser included assault in the second degree to convict instruction to the jury:[1]

> To convict the defendant of the crime of assault in the second degree, each of the following two elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 17th day of February 2012, the defendant:
> (a) intentionally assaulted H.H. and thereby recklessly inflicted substantial bodily harm; or
> (b) assaulted H.H. with a deadly weapon; and
> (2) That this act occurred in the State of Washington.

CP at 450 (Instr. 16). Additionally, the trial court submitted an instruction defining assault:

> An assault is an intentional touching or striking of another person that is harmful or offensive. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

CP at 443 (Instr. 9). The jury also received instructions defining intent and recklessness.

During deliberations, the jury submitted the following question to the trial court: "In instruction 16, does the fact that 1a states 'intentionally assaulted' and 1b only states 'assaulted' imply that satisfying 1b does not require 'intent'?" CP at 470. Following discussion with counsel, the trial court responded: "Regarding your question dated June 13, 2013, at 11:38 am, please refer

---

[1] The record on appeal does not contain the State's proposed instructions and it is unclear who proposed the instruction.

7

to your jury instructions." CP at 471. Taylor objected to the trial court not including language telling the jury it should refer to the specific instruction defining assault.

The jury found Taylor guilty of assault in the second degree and attempted kidnapping in the second degree. The jury returned special verdicts finding that Taylor committed both crimes with sexual motivation. The trial court sentenced Taylor to 126 months to life confinement. Taylor timely appeals.

## ANALYSIS

I.    JURY INSTRUCTIONS

Taylor argues that the "to convict" instruction for assault in the second degree failed to accurately instruct the jury as to the element of intent and that it relieved the State of its burden to prove every essential element of the crime beyond a reasonable doubt. We disagree.

A.    Standard of Review and Law

We review jury instructions for errors of law de novo and consider the challenged instructions in the context of all of the jury instructions. *State v. Hayward*, 152 Wn. App. 632, 641-42, 217 P.3d 354 (2009). Generally, a defendant cannot challenge a jury instruction on appeal if he did not object to the instruction in the trial court. *State v. Salas*, 127 Wn.2d 173, 181, 897 P.2d 1246 (1995). A defendant can raise such an error for the first time on appeal if the instruction involves a manifest error affecting a constitutional right. *Salas*, 127 Wn.2d at 182. Instructing the jury in a manner that relieves the State of its burden of proof is an error of constitutional magnitude that a defendant can raise for the first time on appeal. *State v. Byrd*, 125 Wn.2d 707, 714, 887 P.2d 396 (1995).

B.      The Trial Court Properly Instructed the Jury on the Elements of Assault in the Second Degree

The jury may look to the instructions as a whole for a complete statement of the elements of the crime charged. *See State v. Brown*, 132 Wn.2d 529, 605-06, 940 P.2d 546 (1997). Our Supreme Court applied this principle in *Byrd* when it held that "the instructions, taken in their entirety" must inform the jury that the State had the burden of proving that the defendant acted with intent to create a reasonable apprehension of harm. 125 Wn.2d at 714-16. Similarly, Division Three of this court looked to the instructions as a whole to determine whether they cured the deficiency found in a "to convict" instruction for assault in the second degree that omitted the element of intent. *State v. Hall*, 104 Wn. App. 56, 63, 14 P.3d 884 (2000) (no error where "to convict" instruction omitted the intent element because instructions as a whole properly informed the jury that intent was essential element of assault in the third degree).

Here, the State charged Taylor with alternative means of committing assault in the second degree. The State alleged Taylor either (1) intentionally assaulted H.H. and recklessly inflicted substantial bodily harm or he (2) assaulted H.H. with a deadly weapon. The court instructed the jury using the standard WPIC language. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.12, at 465 (3d ed. 2008). The first alternative is written to encompass both of the mens rea required to prove it. The second alternative involves only one mens rea.

Taylor's argument is that the juxtaposition of these alternatives is error. We disagree. To prove both alternatives, the State had to prove that an assault occurred. Jury instruction 9 correctly defined "assault": "[a]n assault is an intentional touching or striking of another person that is harmful or offensive." CP at 443 (Instr. 9). The first alternative required that the State prove that Taylor also recklessly inflicted substantial bodily harm. We presume that the jury reads and follows the instructions as a whole. *State v. Alford*, 25 Wn. App. 661, 670, 611 P.2d 1268 (1980),

9

*aff'd, State v. Claborn*, 95 Wn.2d 629, 628 P.2d 467 (1981). Here, the instructions as a whole properly informed the jury the State had to prove intent in both alternatives of assault in the second degree. The trial court did not err.

Taylor further argues that the jury's question regarding the intent element indicates that it believed the State did not have to prove intent to convict Taylor of assault in the second degree. We disagree. A jury question, if properly answered, cannot create an assumption as to the basis for the jury's decision. *See State v. Ng*, 110 Wn.2d 32, 43, 750 P.2d 632 (1988) (jury's question does not create an inference that the entire jury was confused, or that any confusion was not clarified before a final verdict was reached). "'[Q]uestions from the jury are not final determinations, and the decision of the jury is contained exclusively in the verdict.'" *Ng*, 110 Wn.2d at 43 (quoting *State v. Miller*, 40 Wn. App. 483, 489, 698 P.2d 1123 (1985)). Questions from the jury cannot be used to impeach a verdict. *Ng*, 110 Wn.2d at 43. The jury's question during deliberations does not establish that the jury convicted Taylor without finding the required element of intent. Therefore, Taylor's claim fails and we hold that the trial court properly instructed the jury.

II.    COMMENT ON THE EVIDENCE

Taylor argues that the trial court impermissibly commented on the evidence when it responded to the jury's question with the statement, "'please refer to your jury instructions.'" Br. of Appellant at 11 (quoting CP at 471). Specifically, Taylor argues that the trial court's response directing the jury to refer to its instructions lowered the State's burden of proof and violated due process. We disagree.

A.   Standard of Review and Law

Article IV, § 16 of the Washington constitution prohibits judges from commenting on evidence. *State v. Elmore*, 139 Wn.2d 250, 275, 985 P.2d 289 (1999). We review constitutional questions de novo. *State v. Cubias*, 155 Wn.2d 549, 552, 120 P.3d 929 (2005). "To constitute a comment on the evidence, it must appear that the [trial] court's attitude toward the merits of the cause are reasonably inferable from the nature or manner of the [trial] court's statements." *State v. Carothers*, 84 Wn.2d 256, 267, 525 P.2d 731 (1974); *see also State v. Ciskie*, 110 Wn.2d 263, 283, 751 P.2d 1165 (1988) ("An impermissible comment on the evidence is an indication to the jury of the judge's personal attitudes toward the merits of the cause."). "[A]ny remark that has the potential effect of suggesting that the jury need not consider an element of an offense could qualify as judicial comment." *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

B.   The Trial Court Did Not Comment on the Evidence

Here, the trial responded to the jury's question by instructing the jury to "refer to [its] jury instructions." CP at 471. As discussed previously, the jury instructions as a whole properly informed the jury of the specific intent element of assault in the second degree. The trial court's response neither suggested nor had the potential to suggest that the jury need not consider an element of an offense. Nothing in the trial court's response indicates the judge's personal attitudes towards the merits of the cause. We hold that the trial court's response was not a judicial comment.

III.   PROSECUTORIAL MISCONDUCT

Taylor argues that the State committed prosecutorial misconduct on two occasions while cross-examining Taylor. First, the prosecuting attorney asked Taylor about the defense's opening statement. Second, the prosecuting attorney asked Taylor if he had discussed with his attorney a desire to engage in sexual conduct with the victim. Taylor also argues the prosecuting attorney

committed misconduct during rebuttal closing argument by stating that there is no difference between the mens rea required for assault in the second degree and assault in the third degree. We hold that no prosecutorial misconduct occurred.

A.    Standard of Review

To establish prosecutorial misconduct, a defendant bears the burden to establish both that (1) the prosecuting attorney committed misconduct by making inappropriate remarks, and (2) those remarks had prejudicial effect. *See State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012). If the defendant meets that burden, we may reverse the defendant's conviction. *Emery*, 174 Wn.2d at 760-61. We review whether misconduct prejudiced the defendant under one of two different standards of review. *Emery*, 174 Wn.2d at 760-61.

If the defendant objected at trial, then we analyze whether there is a substantial likelihood that the prosecuting attorney's misconduct prejudiced the defendant by affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. But where the defendant failed to object to the prosecuting attorney's misconduct at trial, we apply a different, heightened standard of review. *See Emery*, 174 Wn.2d at 761. Under this heightened standard of review, the defendant must show that the prosecuting attorney's misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. This heightened standard of review requires the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). We focus "more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

12

B.     No Prosecutorial Misconduct

1.     Cross-Examination of Taylor

Taylor's counsel objected to both instances of alleged prosecutorial misconduct during cross-examination of Taylor and the trial court sustained the objections. The trial court instructed the jury that the evidence it was to consider during deliberations consisted of testimony from witnesses, stipulations, and exhibits admitted during the trial and that it was to disregard any inadmissible evidence. There is no misconduct or error.

Here, the prosecuting attorney's questions, while improper, do not amount to misconduct. The prosecuting attorney merely asked two objectionable questions on an issue that Taylor testified to during direct examination. Taylor quickly objected to both questions and the trial court sustained both objections before Taylor answered. There is no substantial likelihood that the prosecuting attorney's questions affected the jury because the trial court instructed the jury to consider only the evidence, not the statements or remarks from counsel. We presume that the jury follows the trial court's instructions. *State v. Lord*, 117 Wn.2d 829, 861, 822 P.2d 177 (1991).

Taylor claims that the prosecuting attorney's questions affected the entire trial such that the jury could not render a fair verdict. We disagree because the prosecuting attorney's questions had no prejudicial effect. The jury heard from Taylor during direct examination that he hoped to engage in sexual conduct with H.H. that night. Taylor also testified that he went to the area of the incident to locate a prostitute and that he believed H.H. was a prostitute. The jury also heard that prior to the incident, Taylor told a friend that he was "'hornier than [expletive].'" RP (June 3, 2013) at 159. The jury also heard that prior to striking H.H. with his vehicle, H.H. did not hear Taylor honk the horn or apply the brakes, or see him swerve out of the way. After impact, Taylor attempted to pick H.H. up off the ground, she struggled, and Taylor dropped her. The jury heard

13

that when asked by law enforcement about whether the mechanical issues of his vehicle were the reason he struck H.H., Taylor replied that wasn't the reason. Given this evidence, there is no substantial likelihood that the prosecuting attorney's improper cross-examination prejudiced or affected the jury's verdict. *See Emery*, 174 Wn.2d at 760. Therefore, we hold that no prosecutorial misconduct occurred during cross-examination of Taylor.

2.    Rebuttal Closing Argument

Taylor next argues that the prosecuting attorney committed misconduct during the State's rebuttal closing argument by misstating the law and thereby lowering the State's burden of proof. Taylor did not object. Therefore, we analyze whether the alleged misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice.

We review a prosecuting attorney's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Carver*, 122 Wn. App. 300, 306, 93 P.3d 947 (2004). In addition, a prosecuting attorney's improper remarks are not grounds for reversal if the defense counsel invited or provoked the comments, they are a pertinent reply to defense counsel's arguments, and are not so prejudicial that a curative instruction would be ineffective. *Carver*, 122 Wn. App. at 306.

Here, the prosecuting attorney's comments during rebuttal closing argument were a pertinent reply to defense counsel's arguments. The prosecuting attorney responded to the defense attorney's comment that "[c]ounsel stated to you during closing [argument] just moments ago that for [a]ssault 2, the State only has to prove that Mr. Taylor recklessly inflicted. Wrong." RP (June 12, 2013) at 44. Furthermore, the statements were not improper because the prosecuting attorney did not misstate the law. Under RCW 9A.36.021(1)(a), a person commits assault in the second degree if he "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily

harm." This crime is comprised of an act, assault, and a result, substantial bodily arm. *See State v. Tunney*, 129 Wn.2d 336, 341, 917 P.2d 95 (1996). The mens rea of intentionally relates to the act of assault and the mens rea of recklessly relates to the result of substantial bodily harm. Read in context, the prosecuting attorney correctly stated that intent "applies to every assault." RP (June 12, 2013) at 93. The prosecutor referenced the infliction of substantial bodily injury by stating, "[I]f [Taylor] committed [a]ssault 3, then he certainly committed [a]ssault 2, because in order to commit [a]ssault 2, the only difference is that [Taylor] has to act recklessly instead of negligently and reckless simply requires, it's Instruction No. 18." RP (June 12, 2013) at 94. The prosecuting attorney did not argue that intent is not an essential element of assault, did not misstate the law, and did not lower the State's burden of proof.

Even if the prosecuting attorney misstated the law during rebuttal closing argument, Taylor cannot show that the comments were so prejudicial that a curative instruction would have been ineffective. Here, no prejudice resulted from the State's closing argument because, as discussed above, the trial court properly instructed the jury on assault in the second degree with its required form of intent. Additionally, the trial court instructed the jury to consider only the evidence, not the statements or remarks from counsel. Therefore, Taylor's argument fails and we hold that no prosecutorial misconduct occurred during the State's rebuttal closing argument.

IV.   TAYLOR'S STATEMENTS

Taylor argues for the first time on appeal that the trial court abused its discretion when it admitted Taylor's statement regarding what he thought the alleged victim was thinking during the incident under ER 401 and ER 403. At trial, however, Taylor's sole objection to the admission of this evidence was under ER 701. He does not appeal the court's decision on that basis. Because Taylor must assign error "only on a specific ground made at trial," and does not allege a manifest

15

error affecting a constitutional right, this argument is not proper. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007); RAP 2.5(a)(3).

## V.   CUMULATIVE ERROR

Finally, Taylor argues that we should reverse his convictions under the cumulative error doctrine. Application of the cumulative error doctrine "is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Because no errors occurred, no cumulative and enduring prejudice occurred that likely affected the jury's verdict. Therefore, no accumulation of error denied Taylor a fair trial. We hold this claim is without merit.

We affirm Taylor's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Sutton, J.

16