IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36441-1-III, |
| | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| JAVIER GILES, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J.— Javier Giles appeals his convictions for felony driving while under the influence (DUI), second degree driving with a suspended license (DWLS), driving without a valid ignition interlock device (IID), and hit and run on an unattended vehicle. He contends the evidence was insufficient to support the convictions. We reject his argument and affirm.

## FACTS

We draw the facts from trial testimony. On November 24, 2017 at 9 p.m., Mary Edmondson watched television in her Yakima home when she heard a "big bang." Report of Proceedings (RP) at 133. When looking out a window, she saw a dark SUV against her red 1992 Mercury Topaz parked on the street. RP at 133-35. As she watched, the SUV reversed and drove down Alder Street away from her vehicle. Edmondson believed the driver of the SUV was male because the driver's short hair. When she

examined her Mercury, she noticed a dented fender and wheel and a flattended tire.

Near the same time, Brian and Tara Sampson returned home from a restaurant. Tara saw a dark green Ford speeding and fishtailing as it turned from 12th Street on to Alder Street. Tara lost sight of the vehicle when it turned, but, when her vehicle reached the stop sign at the intersection of Alder, she saw the Ford driving from the spot where it collided with a parked Mercury.

The Sampsons followed the Ford, and Tara Sampson called 911 to report the incident. She did not see the license plate of the Ford, but noticed a distinctive sheet of plastic covering a missing passenger window of the vehicle. The Ford continued to move erratically through the street. RP at 125. Tara Sampson remained on the line with 911, and she and her husband followed the Ford until they lost sight of the car.

Officers Guju, Gronewald, and Schad responded to Tara Sampson's 911 call. Officers Guju and Gronewald attempted to intercept the fleeing vehicle based on the report of its direction of travel. Guju drove a marked patrol vehicle but did not activate the car's emergency lights.

Officer Guju later located a Ford Explorer matching the vehicle description parked at 602 East Yakima Avenue, the location of a closed business formerly known as "The Depot." RP at 151. The Ford Explorer showed damage consistent with hitting the parked

Mercury. The car sustained a large dent on the driver's side of the vehicle and suffered a hanging side mirror and driver's side flat tire. Officer Guju saw a group of five to ten people gathered at the front of the building near the Ford Explorer. He recognized some of bystanders from prior contact. As he pulled his patrol car behind the Ford Explorer, Officer Guju noticed one man walk away. Officer Guju deemed the ambling odd since none of the other people in the group left the building front.

Officer Guju identified himself as a police officer and told the sauntering man he could not leave. The man ignored the officer's command to stop. As Officer Gronewald arrived at the scene, the strolling man volunteered: "I wasn't driving." RP at 157. At the time of this comment, Officer Guju had not asked the man any questions or indicated that he was being detained for a driving offense. Officer Guju recognized the man as Javier Giles based on prior interaction with Giles involving his vehicle, a Ford Explorer. As Giles continued walking, Guju and Gronewald intercepted and detained him. Officer Schad arrived thereafter.

During a search of Javier Giles' person, Officer Guju found a Ford car key on a lanyard around his neck. The key unlocked the Ford Explorer. While detained by the officers, Giles voiced expletives and repeatedly claimed that he had not been driving.

A search of the Ford Explorer revealed registration in Javier Giles. The officers

3

found three cans of a malt liquor beverage and a bottle of whiskey in the vehicle. The officers also observed no functional ignition interlock device inside the Explorer.

Officer Shad detained Javier Giles in the officer's patrol car during the search of the Ford Explorer. Shad noted a strong smell of alcohol and observed that Giles' eyes were bloodshot. Giles admitted to consuming one beer, but refused to submit to a portable breath test. The officers did not conduct a field sobriety test because Officer Schad did not wish Giles released from the handcuffs.

Officer Schad arrested Javier Giles and transported him to jail. Giles refused to submit to an evidentiary breath test. Law enforcement, at 3:27 a.m., drew Giles' blood pursuant to a search warrant. The blood test showed a blood alcohol level of .091 grams per 100 milliliters.

At trial, the defense highlighted the State's lack of direct evidence that Javier Giles drove the Ford Explorer on the evening of November 24. After the State rested, Giles moved to dismiss counts the DUI, DWLS, and IID charges for lack of evidence that he drove a car. The trial court denied the motion. Giles did not call any witnesses. The jury found Giles guilty of all four charges.

## ANALYSIS

On appeal, Javier Giles claims insufficient evidence supported all four convictions

because no evidence established he drove the Ford Explorer on November 24.

Evidence suffices for a conviction if, when viewed in the light most favorable to the State, the evidence permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from the evidence. *State v. Salinas*, 119 Wn.2d at 201. Circumstantial evidence receives the same weight as direct evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Appellate courts defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d at 874-75.

All four crimes at issue required the State to prove that Javier drove the Ford Explorer. RCW 46.61.502(1); RCW 46.20.342(1); RCW 46.20.740(2); RCW 46.52.010(1). Giles contends that his presence in the crowd near the Ford Explorer a short time after the collision falls short of the evidence needed to convict. He argues that the State's evidence fails the quantum of evidence held sufficient in *State v. Salas*, 127 Wn.2d 173 (1995) and *State v. Danielson*, 37 Wn. App. 469, 681 P.2d 260 (1984).

In *State v. Salas*, the State convicted Efrain Salas with vehicular homicide. Salas challenged the sufficiency of the evidence that he drove a vehicle on the basis that, when

the police arrived at the scene of the accident, he and two other individuals stood near the vehicle and officers could not discern which of the three drove the car. The Supreme Court rejected his argument because of a Washington State Patrol investigation and reconstruction of the accident determined Salas drove the car and because the two passengers identified Salas as the driver.

In *State v. Danielson*, Rick Danielson was found guilty of felony flight based on a vehicle chase that ended when the vehicle became stuck in a large mud puddle and the driver and passenger fled. This court held that evidence sufficed to convict Danielson. The evidence included testimony from his mother and father that Danielson was the primary driver of the vehicle and his statements to others that he drove the vehicle into a ditch on the day in question and he might be in trouble with the police.

*State v. Salas* and *State v. Danielson* help to inaugurate parameters as to the evidence needed to convict one of a driving offense. But neither decision establishes minimum amounts of evidence needed to convict. Neither decision held that someone must testify that the accused drove a car. Generally, the question of sufficiency of evidence requires an individualized inquiry in each prosecution.

We hold that the State presented ample circumstantial evidence that Javier Giles drove the Ford Explorer on the night of November 24, 2017. Javier Giles was the

6

registered owner of the Ford Explorer. Officers spotted Giles at the location where someone parked the car immediately after the collision with the Mercury. Giles then possessed the keys to the Ford. No other person at the scene had any ownership interest in the Explorer. No other person sought to elude police. Giles continued to walk after ordered to stop. No other person adamantly denied driving the car without having been asked.

Javier Giles' ambling from the scene as police arrived created an inference of conscious of his guilt. *State v. McDaniel*, 155 Wn. App. 829, 854, 230 P.3d 245 (2010). As a general rule, evidence of flight following the commission of a crime may be considered by the jury "as a circumstance, along with other circumstances of the case, in determining guilt or innocence." *State v. Bruton*, 66 Wn.2d 111, 112, 401 P.2d 340 (1965). Flight is an instinctive or impulsive reaction to a consciousness of guilt or is a deliberate attempt to avoid arrest and prosecution. *State v. Freeburg*, 105 Wn. App. 492, 498, 20 P.3d 984 (2001).

Javier Giles contends he any number of reasons, unrelated to consciousness of guilt, could explain his avoiding police contact, including his prior interactions with the police. Nevertheless, the jury may determine whether to draw the inference of a guilty consciousness. We defer to the jury's evaluation of the evidence. *State v. Homan*, 181

No. 36441-1-III
*State v. Giles*

Wn.2d 102, 106, 330 P.3d 182 (2014).

CONCLUSION

We affirm Javier Giles' convictions for driving under the influence, second degree driving with a suspended license, driving without a valid ignition interlock device, and hit and run on an unattended vehicle.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____    _____
Lawrence-Berrey, C.J.              Pennell, J.

8