# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50707-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| HOWARD B. GOODWIN, IV, | |
| Appellant. | |

GLASGOW, J. — Despite a court order prohibiting Howard Goodwin from having contact with Patricia Meyer, he decided to spend the night with her in a park because she was homeless. Meyer called the police in the early morning hours and said that Goodwin, her boyfriend of 14 years, had assaulted and attempted to rape her. Later that night, she also told the police and emergency room staff that Goodwin had assaulted her and tried to force her to have sex and perform oral sex on him.

At trial, Meyer recanted to some degree. The prosecutor argued to the jury that they should believe Meyer's statements on the night of the assault, rather than Meyer's testimony at trial where Goodwin was present. Defense counsel did not object. The jury acquitted Goodwin of second degree attempted rape but convicted him of second degree assault, fourth degree assault, violation of a court order, and indecent liberties with forcible compulsion.

Goodwin appeals, arguing that the prosecutor improperly commented on Goodwin's exercise of his right to be present at his own trial and that Goodwin's defense counsel was ineffective for failing to object to the prosecutor's statement. We conclude that the prosecutor's statement was not improper because it addressed the credibility of witness statements. As a

result, defense counsel was not deficient in his failure to object. Goodwin also raises several arguments in his statement of additional grounds and supplemental statement of additional grounds. We reject those arguments as well. Accordingly, we affirm Goodwin's convictions.

FACTS

At the time of the incident, a no-contact order prohibited Goodwin from having contact with Meyer. Nevertheless, the two of them went to a park together, where they began kissing and engaging in foreplay.

After some time they began arguing, and the argument eventually escalated into a physical fight. Goodwin started wrestling Meyer to keep her from leaving as she was trying to run away, and he threw Meyer to the ground where she hit her head. Meyer then managed to get away. Goodwin told her that "it wasn't going to be good" if she called the police and then he ran away. Verbatim Report of Proceedings (VRP) (Vol. IV) at 390. Meyer called the police. During that call, Meyer said that she had refused to have sex with Goodwin and in response, he had hit her.

When police and medics arrived at the park, they took Meyer to the emergency room. There Meyer told Dr. Brett Jensen that Goodwin had assaulted her, saying he had picked her up, thrown her, kicked her, and hit her. Meyer also told Dr. Jensen that he tried to force her to have oral sex, but that no penetration had occurred. Meyer reported a significant headache and pain in her back, neck, hand, wrist, left arm, and leg. Dr. Jensen noted multiple tender areas, abrasions, and swelling on Meyer's scalp and the side of her head. Meyer declined a sexual assault exam.

Meyer also discussed the incident with a nurse and a police officer, Deputy Russell Bradseth, at the hospital. Meyer told the nurse that Goodwin had shoved, pushed, kicked her,

2

and grabbed her by the face, but she denied being sexually assaulted. Meyer reported to Deputy Bradseth that she had told Goodwin she did not want to have sex and just wanted to sleep, and she told him several times to stop touching her. Meyer said that Goodwin had climbed on top of her, tried to force her to have sex, and yelled at her to touch his penis.

Meyer also made a written statement to the police in which she said that Goodwin had "physically assaulted and sexually assaulted" her "three separate times," and on his "last attempt to rape" her he body slammed her onto the concrete and threatened to kill her if she called the police. VRP (Vol. IV) at 457.

The State charged Goodwin with second degree attempted rape, second degree assault, fourth degree assault, felony violation of a domestic violence court order, and indecent liberties with forcible compulsion.

At trial, the prosecutor played a redacted version of Meyer's 911 call for the jury. During the call, Meyer said that Goodwin "wanted to have sex and I said 'no,' and he just started hitting me and beating me and telling me how he was going to (inaudible) make me, make me." VRP (Vol. IV) at 411. Meyer told the dispatcher that she was sexually assaulted and that Goodwin "picked [her] up and body slammed [her] on the cement," and also tried to force her to perform oral sex on him "[s]everal times." VRP (Vol. IV) at 412, 420-24. Dr. Jensen, the emergency room nurse, and Deputy Bradseth all testified to what Meyer had told them that night.

At trial, Meyer recanted to some degree. She testified that Goodwin never hit her, but he told her he was going to force her to have sex, he attempted to make her perform oral sex, and he threatened to kill her if she called the police. She also denied any sexual assault. She admitted that she had been using methamphetamine that night, but she was not sure if it had affected her

3

memory. Dr. Jensen testified that he saw no signs of drugs or alcohol use when he examined Meyer in the emergency room.

Goodwin also testified at trial. He agreed that he and Meyer got into a verbal argument that escalated into a physical altercation, although he claimed it was Meyer who instigated the argument and escalated it by throwing a bucket of chicken at him as he was leaving because he had fallen asleep during foreplay. He admitted that he grabbed Meyer by the hair, "smacked her upside the head," and wrestled with her to keep her from calling 911. VRP (Vol. V) at 584-86, 605. He also did not dispute that he violated the no-contact order. He said he never tried to force Meyer to have sex with him, nor did he threaten to hurt her if she called the police.

In closing argument, the prosecutor read aloud Meyer's written statement to the police, noting that she signed it under penalty of perjury, and then made the following argument:

> Now, defense counsel may want you to disbelieve [Meyer], disbelieve what she says to 911, what she said to the doctor, what she wrote in her statement. He, defense [counsel], he wants you to believe what [Meyer] has testified to the last two days.

> So what do we make of her testimony in the last two days? Well, first off, remember, that testimony, those statements were made in front of Mr. Goodwin. This 911 call was not, the statements to the doctor were not, and her statements to Deputy Bradseth were not. She has admittedly said, she wants to see him again. She told you that at one point back in November she felt that Mr. Goodwin was all that she had.

VRP (Vol. V) at 672. Defense counsel did not object to any of these statements.

The jury acquitted Goodwin of attempted second degree rape and convicted on all other counts.

Goodwin appeals his convictions.

4

ANALYSIS

I.  PROSECUTORIAL MISCONDUCT

Goodwin argues that during closing argument the prosecutor improperly commented on Goodwin's exercise of his constitutional right to be present at trial.  We disagree.

A.      Burden for Allegations of Prosecutorial Misconduct

To prevail on a prosecutorial misconduct claim, Goodwin bears the burden to show that the prosecutor's comment on his presence at trial was both improper and prejudicial in the context of the entire record and the circumstances at trial.  *See State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).  When a claim is made that the prosecutor committed misconduct during closing argument, we review the prosecutor's statements "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions."  *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).  During closing argument, prosecutors have "'wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence.'"  *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006)).

The defendant must show there is a "'substantial likelihood'" the improper statements affected the jury's verdict.  *State v. McCreven*, 170 Wn. App. 444, 468, 284 P.3d 793 (2012) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).  The failure to object to an improper remark constitutes waiver "unless the remark is so flagrant and ill intentioned that it causes enduring and resulting prejudice" that an instruction or admonition to the jury could not

have cured. *Thorgerson*, 172 Wn.2d at 443 (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)); *see also State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

B.      Reference to a Defendant's Exercise of a Constitutional Right

The State may not draw adverse inferences from the exercise of a constitutional right. *See generally, United States v. Jackson*, 390 U.S. 570, 581, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968); *State v. Rupe*, 101 Wn.2d 664, 705, 683 P.2d 571 (1984) (listing cases). Our Supreme Court has recognized that "a comment in closing argument that is 'tied only to the defendant's presence in the courtroom and not to his actual testimony'" can run afoul of article I, section 22 of the Washington Constitution. *State v. Martin*, 171 Wn.2d 521, 535-36, 252 P.3d 872 (2011) (quoting *Portuondo v. Agard*, 529 U.S. 61, 77, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000) (Ginsburg, J., dissenting)). A comment on the exercise of a constitutional right in closing argument after the defendant has submitted his case is particularly problematic because the defendant may be prevented from providing a meaningful response. *Id.* at 535-36.

Nevertheless, our Supreme Court recently reiterated that "not all arguments that discuss a defendant's constitutional rights are impermissible. The question is 'whether the prosecutor manifestly intended the remarks to be a comment on that right.'" *State v. Scherf*, 192 Wn.2d 350, 391, 429 P.3d 776 (2018) (quoting *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)). And in *Crane*, a fleeting comment was insufficient to amount to an improper comment on a constitutional right. There, the prosecutor commented during witness examination that the defense thought someone else had committed the murder at issue. *Crane*, 116 Wn.2d at 331. That comment was too fleeting to amount to an improper comment on the defendant's right not

to testify, even though it might have suggested that the defendant had a burden to prove someone else killed the victim. *Id.*

*State v. Gregory* is the most similar to this case because it came down to a credibility contest between Gregory and the victim, who alleged Gregory had raped her. 158 Wn.2d 759, 807-08, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014). In those circumstances, the *Gregory* court concluded that it was not improper for the prosecutor to comment in closing argument on the emotional effect that testifying had on the victim, so long as the focus was on her credibility and not specifically on Gregory's right of confrontation. *Id.* The court explained,

> We conclude that the questioning and argument at issue here were not improper because they did not focus on Gregory's exercise of his constitutional rights to trial and to confront witnesses. Instead they focused on the credibility of the victim as compared to the credibility of the accused.

*Id.* at 808.

Thus, even where a prosecutor has arguably commented on a defendant's exercise of a constitutional right, and even where the prosecutor has done so in closing argument, our Supreme Court has analyzed whether the comment was focused on the defendant's exercise of the right or on something else like the relative credibility of witnesses.

C.    The State Did Not Improperly Comment on Goodwin's Right to Be Present

Goodwin contends that the prosecutor improperly commented on Goodwin's exercise of his right to be present at trial by suggesting that Meyer changed her story because she had to testify in front Goodwin, her boyfriend of 14 years. The State counters that the entire context of the prosecutor's argument shows that he sought not to draw a negative inference against

7

Goodwin on account of his presence, but rather to provide one reason why Meyer's testimony conflicted with multiple previous statements. We agree with the State.

The prosecutor commented on Goodwin's presence to bolster the credibility of Meyer's statements on the night of the assault and explain one possible reason why her trial testimony contradicted those statements. In the context of this case, like the comments in *Gregory*, the prosecutor's comment here was focused on the credibility of the witness rather than the exercise of Goodwin's right to be present. As a result, we conclude that the State did not manifestly intend it to be a comment on Goodwin's right to be present and the prosecutor's statement was not improper.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In the alternative, Goodwin contends that he received ineffective assistance of counsel when his trial counsel failed to object to the prosecutor's statement discussed above. Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right of a criminal defendant to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). Washington follows the *Strickland* test: the defendant must show both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. 466 U.S. at 687; *State v. Cienfuegos*, 144 Wn.2d 222, 226, 25 P.3d 1011 (2001).

Here, we have concluded that the prosecutor's comment was focused on the credibility of the witness rather than the exercise of Goodwin's right to be present. As a result, the prosecutor's comment was not improper. Because the prosecutor's comment was not improper,

8

defense counsel's performance was not deficient when he failed to object. We conclude that Goodwin's ineffective assistance claim fails.

### III.  STATEMENT OF ADDITIONAL GROUNDS

Goodwin raises several more claims in his statement of additional grounds and supplemental statement of grounds. We reject his arguments that there was insufficient evidence to support his convictions and that he was deprived of his right to a fair jury trial because, he asserts, the jury returned verdicts that were inconsistent. We decline to consider his remaining arguments that he was deprived of his right to an impartial jury, the prosecutor was vindictive and failed to uphold his duties in violation of Goodwin's due process and equal protection rights, and the trial court abused its discretion.

### A.     Sufficiency of the Evidence

Goodwin argues that his convictions for indecent liberties with forcible compulsion and second degree assault, as well as the jury's specific finding of sexual motivation, were based on insufficient evidence. We disagree.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Imokawa*, 4 Wn. App. 2d 545, 560, 422 P.3d 502 (2018). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* Circumstantial evidence and direct evidence are equally reliable. *State v. Arquette*, 178 Wn. App. 273, 282, 314 P.3d 426 (2013). "'Credibility determinations are for the trier of fact and cannot be reviewed on appeal.'" *Imokawa*, 4 Wn. App. 2d at 560 (quoting *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)).

Goodwin argues there was insufficient evidence because Meyer's trial testimony and her statements made on the night of the assault were inconsistent and she was under the influence of drugs on that night. He also claims that the 911 dispatcher, police officers, and hospital staff misinterpreted some of Meyer's statements. Goodwin essentially argues that inconsistencies in Meyer's various accounts of the incident undermine the State's evidence to such an extent that no rational jury would have convicted him.

The evaluation of witness credibility is left to the jury. *See Imokawa*, 4 Wn. App. 2d at 560. The jury ultimately resolved the credibility of various witnesses, as well as Meyer's inconsistent statements, by acquitting Goodwin of attempted rape and making a finding reducing his conviction for violating the no-contact order to a misdemeanor, but otherwise finding the elements of the charged crimes were met. Admitting the truth of the State's evidence, and viewing that evidence in the light most favorable to the State, we conclude there was sufficient evidence to support the jury's verdict.

Goodwin also claims that the evidence was insufficient to support the element of forcible compulsion for his conviction for indecent liberties. In relevant part, "[f]orcible compulsion means physical force that overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury." Clerk's Papers at 65. Goodwin maintains that he never used physical force, nor did he make any threats that placed Meyer in fear of death or physical injury. But there is ample evidence from Meyer's 911 call, statements to hospital staff and police officers, and her sworn written statement to the police to support the jury's finding on this element. We conclude there was sufficient evidence of forcible compulsion to support the jury's verdict.

Finally, without citation to supporting case law, Goodwin argues that the standard of review for insufficient evidence violates the Equal Protection Clause of the Fourteenth Amendment and the right to a fair appeal under article I, section 22 of the Washington Constitution. This unsupported argument is clearly without merit.

B.      Consistency of the Verdicts

Goodwin next argues that the jury's verdicts were inconsistent. We disagree.

Goodwin contends that because the jury acquitted him of attempted second degree rape, which requires a finding of intent to commit second degree rape, it could not have also found him guilty of second degree assault, because that crime also requires a finding of intent to commit second (or third) degree rape. In other words, because the intent element in the jury instructions was the same for both crimes, Goodwin argues that the jury made a mistake by convicting him of second degree assault when it had acquitted him of attempted second degree rape.

However, attempted second degree rape requires another element that second degree assault does not: that the defendant commit an act that was a substantial step toward the commission of second degree rape. RCW 9A.44.050; RCW 9A.28.020(1). Second degree assault, on the other hand, requires that the defendant assault another with the intent to commit a felony, in this case to commit second or third degree rape. RCW 9A.36.021(1)(e). It is reasonable to infer from the jury's verdict that it found that Goodwin had the intent to commit second degree rape, but acquitted him of attempted rape because he did not take a substantial step toward committing that crime. The jury then separately found that he committed assault

11

with sexual motivation, with the intent to commit second degree rape, and thus properly found him guilty of second degree assault.

In addition, even if there were some inconsistency in the jury's verdicts, that alone would not require reversal. *State v. Goins*, 151 Wn.2d 728, 737, 92 P.3d 181 (2004). When a reviewing court concludes that a jury's verdicts are inconsistent, it must then verify that the guilty verdict is supported by sufficient evidence. *Id.* This approach respects the jury's role where, for example, lenity provides a possible explanation for the inconsistency. *Id.* at 735. Here, we have already concluded that there was sufficient evidence to support the guilty verdict on second degree assault. Thus, even if the jury's verdicts were inconsistent, reversal would not be required.

Because there was no apparent mistake or inconsistency on the part of the jury and there was sufficient evidence to support the conviction of second degree assault in any event, we conclude Goodwin was not deprived of his right to a fair trial.

C.    Other Claims

Goodwin claims that his right to an impartial jury was violated, the prosecutor was vindictive and failed to uphold his duties in violation of Goodwin's due process and equal protection rights, and the trial court abused its discretion. Rather than argue these issues in his direct appeal, Goodwin expresses his intent to reserve and raise them in a future personal restraint petition or through other means.

Although RAP 10.10(c) does not require Goodwin to refer to the record or cite authority, it does require him to inform us of the "nature and occurrence of the alleged errors." These assertions of error are too vague to allow us to identify the issues and we do not reach them.

No. 50707-2-II

CONCLUSION

We affirm Goodwin's convictions.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, J.

Maxa, C.J.